This is an appeal from the Jackson County Circuit Court's grant of a preliminary injunction in favor of Scottsboro Newspapers, Inc., and against its former employee, James K. Harkness, to enforce a covenant not to compete. We affirm.
The facts giving rise to this appeal are as follows:
Appellant Harkness was employed by Scottsboro Newspapers as the publisher and editor of the Daily Sentinel and served as president and chairman of the board of directors of Scottsboro Newspapers for approximately 17 years.
During Harkness's tenure as publisher and editor, Harkness and Scottsboro Newspapers entered into an agreement which provided that in the event Scottsboro Newspapers terminated Harkness's employment, Harkness would receive certain deferred compensation. The deferred compensation contract provided that Harkness would be paid upon his termination of employment with the newspaper an amount based on the percentage of the increase in value of Scottsboro Newspapers during the term of his employment. The payments were to be made in 10 equal annual installments, the first installment to be within 30 days after his termination.
As consideration for the deferred compensation, Harkness agreed to this paragraph 15 of the deferred compensation contract:
 "[D]uring a period of ten (10) years . . . Employee will not directly or indirectly engage in the business of, or own or control, any interest in or act as a director, officer or employee of, or consultant to any person, partnership, corporation or other entity directly or indirectly engaged in any phase of the publishing, advertising, printing, newspaper, periodical, or any other type of business in any way related to his employment with Company, as employee, shareholder, publisher, owner, or advertising salesman, within an area covering a fifty (50) mile radius from the offices of any such business owned or operated by Company."
On March 24, 1987, Harkness's employment with Scottsboro Newspapers was terminated, and he was removed as editor and publisher of the Daily Sentinel and as president and chief executive officer of Scottsboro Newspapers, Inc. At that time, he was paid an accrued bonus of $9,383.96, and the first of the 10 annual deferred compensation payments, in the amount of $4,407.87. After his termination, the parties signed a document whereby Harkness acknowledged that he had received the first of 10 annual installments in accordance with the terms of the deferred compensation contract.
Shortly after his dismissal, Harkness sent a letter to Lisa Walls of Southern Newspapers, Inc., suggesting several proposals regarding his future printing plans, admitting that some of the proposals involved business ventures located within a 50-mile radius of the Daily Sentinel. Southern Newspapers, Inc., is the corporation which wholly owns Scottsboro Newspapers, Inc. Lisa Walls replied by letter, stating that the company expected Harkness *Page 1002 
to comply with the non-competition agreement and that his proposals, if implemented, would violate the agreement. Walls further advised Harkness that if he were to pursue any of his proposals, legal action would be taken against him.
Thereafter, on June 4, 1987, Harkness filed a complaint for a declaratory judgment, asking for a declaration of the rights of the parties involved in the deferred compensation contract and for a determination of whether the covenant not to compete was valid. During June 1987, he also formed Valley Color Web, Inc., an Alabama corporation. Harkness and his wife were the principals in this corporation. The corporation invested approximately $365,000 in a commercial printing press and other equipment essential for commercial printing. The commercial printing operation was located approximately 3 1/2 miles from the facilities of Scottsboro Newspapers. Harkness testified that he was doing printing work for various customers who had previously used Scottsboro Newspapers. Harkness testified that he had established a business relationship with a number of the aforementioned customers while he was employed at Scottsboro Newspapers, Inc.
In July 1987, Scottsboro Newspapers filed a motion to dismiss the complaint for declaratory judgment, on the grounds that no justiciable controversy existed between the parties.
In late July 1987, while awaiting a hearing on its motion to dismiss, Scottsboro Newspapers filed a separate complaint seeking specific performance of the contract and claiming conversion, breach of fiduciary duty, fraud, and intentional interference with business relations. Contemporaneously with the filing of the complaint, Scottsboro Newspapers applied for a preliminary injunction under Rule 65, Ala.R.Civ.P., seeking to enjoin Harkness from violating the covenant not to compete.
In late August 1987, the Circuit Court of Jackson County consolidated the two actions. In mid-September 1987, the Honorable W. Loy Campbell, Circuit Judge, granted the preliminary injunction, and Scottsboro Newspapers posted a preliminary injunction bond in the amount of $300,000. Harkness, on appeal, seeks reversal of that injunctive order.
In Double C. Productions, Inc. v. Exposition Enterprises,Inc., 404 So.2d 52 (Ala. 1981), this Court established the rule a trial court must apply in determining whether to issue preliminary injunctive relief:
 " '1) A trial judge does not have to find that the party seeking a preliminary injunction would certainly prevail on the merits in order to grant the injunction. Rather, if he finds that the party has presented a fair question as to the existence of the right to be protected, and further finds that temporary interference to preserve the status quo is convenient and expedient, then he may exercise his discretion and grant the injunction.' [Citation omitted.]
 " '2) . . . An injunction should not be granted unless it is necessary to prevent irreparable injury.' [Citation omitted.]
 " '3) Injunctions, however, will not be granted '. . . merely to allay apprehension of injury; the injury must be both imminent and irreparable in a court of law. . . .' " [Citation omitted.]
404 So.2d at 54.
Ingrained in the use of this three-pronged test is the employment of a balancing process, whereby the trial court, in its discretion, appraises the relative hardships against any benefits that might come from the grant of the preliminary injunction. Valley Heating, Cooling Electric Co. v. AlabamaGas Corp., 286 Ala. 79, 82, 237 So.2d 470 (1970).
This Court adheres to the principle that the grant of a preliminary injunction will not be reversed on appeal absent an abuse of discretion. This abuse must be of such a nature as to constitute or manifest injustice unless rectified on appeal.Alabama Education Association v. Board of Trustees,374 So.2d 258 (Ala. 1977). Such an abuse of discretion is not evident in this case; hence, the judgment of the trial court is due to be affirmed. *Page 1003 
We, of course, do not have the merits of this case before us. The singular issue presented on this appeal is whether the trial court abused its discretion in granting the preliminary injunction, and that is all that we decide.
The record reveals that the trial court issued the preliminary injunction after weighing all the evidence proffered by the parties, which included affidavits, depositions, live testimony, and various exhibits. It is readily apparent from the trial court's order that it appropriately considered the possibility of irreparable injury, the absence of an adequate remedy at law, the probability of success on the merits, and the preservation of the status quo.
Upon consideration of the circumstances surrounding this case, we find no abuse of discretion by the trial court that would mandate reversal; therefore, the order granting the preliminary injunction is due to be, and it is hereby, affirmed.
Our affirmance, however, should not be construed as a ruling on the merits of the controversy; we affirm simply because we do not find that the trial judge abused his discretion in issuing the preliminary injunction. The rule this Court has consistently applied in reviewing preliminary injunctions is set out in Alabama Ed. Ass'n v. Board of Trustees of theUniversity of Alabama, 374 So.2d 258 (Ala. 1979), as follows:
 "A trial judge does not have to find that the party seeking a preliminary injunction would certainly prevail on the merits in order to grant the injunction. Rather, if he finds that the party has presented a fair question as to the existence of the right to be protected, and further finds that temporary interference to preserve the status quo is convenient and expedient, then he may exercise his discretion and grant the injunction. Watts v. Victory, [333 So.2d 560 (Ala. 1976)]; Coxe v. Huntsville Gas Light Co., 129 Ala. 496, 29 So. 867 (1901)."
374 So.2d at 262.
AFFIRMED.
TORBERT, C.J., and BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON and SHORES, JJ., concur in the result.