William David Gross, Jr., and Conde Systems, Inc., appeal from an interlocutory order granting a preliminary injunction in favor of QMS, Inc., pending a final hearing and trial. We affirm.
Gross was an employee of The Laser Connection ("TLC"), a wholly owned subsidiary of QMS, between 1987 and 1990. TLC merged with QMS in October 1990. Gross remained an employee of QMS until his employment was terminated in January 1992.
Gross had signed an employment contract with QMS on July 4, 1987. Included in the contract was a covenant not to compete, whereby Gross agreed not to engage in any business "which is the same or essentially the same as the business of TLC" for a period of three years after the termination of his employment with QMS. Gross also agreed, in the employment contract, not to solicit QMS customers or employees for three years after his termination, and not to use or disclose confidential information obtained as a QMS employee.
Gross and another former QMS employee, Neil Armentrout, sued QMS on February 26, 1992, seeking payment of compensation allegedly owed them under their employment contracts with QMS.[1] QMS counterclaimed against Gross and Armentrout for specific performance of the covenants in their employment contracts. QMS also joined Conde Systems, Inc. ("Conde"), a company formed by Gross and Armentrout after their termination from QMS, as a defendant in its countersuit.
QMS moved for a preliminary injunction on April 16, 1992, to enjoin Gross, Armentrout, and Conde, pending the final outcome of the case, from competing with the business of QMS, from soliciting QMS's customers or employees, or from using and disclosing confidential information of QMS in violation of their agreements with QMS. After a four-day hearing, the trial court entered a preliminary injunction against Gross, Armentrout, and Conde, dated May 22, 1992. QMS posted a $350,000 cash bond pursuant to the preliminary injunction order. Gross and Conde appeal from the trial court's order granting the preliminary injunction.
The sole issue is the validity of the preliminary injunction. A proper interpretation of the provisions of Gross's employment contract with QMS and any other substantive issues involving the merits of the case below are matters to be decided by the trial court.
This appeal from an interlocutory, or preliminary, injunction is properly before this Court. Rule 4(a)(1)(A), A.R.App. P. Therefore, we must determine if the trial court acted within the scope of its power in issuing the preliminary injunction. "It is well established that the issuance of injunctive relief is within the sound discretion of the trial court, especially when . . . the facts are in dispute and the evidence is presented *Page 333 
ore tenus." Davis v. Hester, 582 So.2d 538, 540 (Ala. 1991) (citation omitted).
The trial court here followed the three-pronged test for review of a motion for a preliminary injunction, as set forth in Howell Pipeline Co. v. Terra Resources, Inc.,454 So.2d 1353, 1356 (Ala. 1984). See Martin v. First Federal Sav. LoanAss'n of Andalusia, 559 So.2d 1075, 1079 (Ala. 1990). Martin
provides a complete analysis of the standard of review for an appeal from an order entering a preliminary injunction, where the decision of the trial court is based upon ore tenus evidence. Id. at 1078-79. To succeed on appeal, the appellant must establish that the trial court abused its discretion in granting the injunctive relief. Id.; see Davis, supra at 540.
The trial court weighed the hardship and benefits that the preliminary injunction would be likely to impose or bestow on the parties. There was little evidence of any significant harm to the appellants that would occur from the issuance of the preliminary injunction, especially in light of the trial court's order requiring QMS to post a $350,000 bond "for payment of costs, damages and reasonable attorney's fees as may be incurred or suffered by the enjoined parties if they are later found to have been wrongfully enjoined or restrained." Order for Preliminary Injunction at 6; see Martin, supra, at 1079.
Based on the foregoing, and having carefully reviewed the evidence in the record, we determine that the trial court's conclusion that irreparable harm would result if it denied QMS's motion for preliminary injunction was not plainly and palpably erroneous. Therefore, we hold that the trial court did not abuse its discretion in granting the preliminary injunction. The order entering the preliminary injunction is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.
[1] Mr. Armentrout had signed an employment contract with QMS that was essentially identical to Gross's July 4, 1987, contract. Armentrout consented to the entry of an order resolving his dispute with QMS after the filing of this appeal, and this Court dismissed Armentrout from this appeal on August 19, 1992.