This is an appeal from a preliminary injunction granted in favor of the plaintiff, Richard L. Buckley, Jr., against the defendant, Richard D. Seymour, on the basis of a noncompetition agreement between the parties in connection with the operation of a "paintless dent removal" business.[1] We affirm.
The parties to this cause signed a contract on October 10, 1991, in which Seymour agreed to perform services for Buckley in the paintless dent removal business under the terms set forth in the contract. Buckley is the sole proprietor of a business operating in Alabama and other states under the trade name "Press*A*Dent." Paintless dent removal ("PDR") is a process by which a skilled craftsman utilizes special tools and techniques to remove dents, dings, or creases from an automobile without performing any paint work. This is in contrast to traditional automotive body repair methods that involve sanding, filling, and repainting.
Under the terms of the contract, Buckley agreed to provide training to Seymour in the PDR process and Seymour agreed to learn the process, to preserve the secrecy of the process, and to provide PDR in a designated portion of Alabama. The contract also contained a noncompetition clause in which Seymour agreed not to compete with Buckley for two years after the termination of the business relationship. The contract recites that it is to be "governed by, construed and enforced in accordance with the laws of the State of Indiana."
The record reflects that Buckley acquired the right to use the PDR process from Matteson, Inc., in a written agreement, which is part of the record. This agreement provided that Matteson, Inc., would train individuals in the process for Buckley only if they had executed noncompetition and secrecy agreements concerning the PDR process. Buckley paid $18,500 for Seymour to go to California and to be trained there by Matteson, Inc., in the PDR process. Buckley paid Seymour his guaranteed salary of $550 per week, as well. At the conclusion of Seymour's training, Buckley set him up in business *Page 556 
in Birmingham and provided a truck, the tools, a telephone service, and business cards.
The parties maintained a business relationship until February 1993, when Seymour notified Buckley that he was "terminating their agreement" effective March 28, 1993. During March 1993, Seymour began his own business operation as "The Dent Man." Buckley testified that after the relationship was terminated he contacted the customers that Seymour had served while representing Press*A*Dent. Those customers had begun to use the services of The Dent Man. Buckley sued Seymour on May 12, 1993, seeking a temporary restraining order and a permanent injunction enjoining Seymour from interfering with the business or contractual relationship between Buckley and his customers.
The trial court first granted a temporary restraining order, then took testimony and issued the following preliminary injunction, which includes preliminary findings of fact:
 "This cause came on to be heard upon testimony taken and other evidence produced at the time scheduled for the hearing on the plaintiff's request for a preliminary injunction, a 'Temporary Restraining Order' having previously been entered. Based upon the testimony taken, the Court makes the following preliminary findings of fact.
 "1. Before the Defendant, Richard D. Seymour ('Mr. Seymour') became associated with the plaintiff, Richard L. Buckley, Jr. ('Mr. Buckley'), Mr. Seymour was not involved in, had not performed, and knew nothing about the business or procedure known as 'paintless dent removal.'
 "2. Mr. Buckley spent approximately EIGHTEEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($18,500.00) to have Mr. Seymour formally trained in paintless dent removal. The formal training period covered approximately five weeks in California. Additionally, Mr. Buckley paid Mr. Seymour a guaranteed salary while he was building up his customer base in the Birmingham area.
 "3. It is Mr. Seymour's responsibility to sell the service to the customer, perform the service and bill or invoice the customer for the services performed. Mr. Seymour is therefore the sole representative of and the personification of Mr. Buckley in the business of paintless dent removal in Mr. Seymour's territory.
 "4. Mr. Seymour and Mr. Buckley executed an Agreement on October 10, 1991, in which Mr. Seymour agreed to maintain the confidentiality of the paintless dent removal process. Mr. Seymour also agreed that he would not compete with Mr. Buckley in the paintless dent removal business for a period of two years following the date of the termination of the Agreement.
 "5. Mr. Seymour voluntarily terminated the Agreement effective as of March 28, 1993. The Market Area covered by the Agreement includes the counties of [Tuscaloosa,] Jefferson, Walker, Blount, St. Clair and Shelby.
 "6. After the termination of the Agreement, and perhaps before the termination, Mr. Seymour began to set up and did set up a competing business with Mr. Buckley in the process of paintless dent removal. Mr. Seymour was able to persuade several of his customers to allow him to continue to provide them with the paintless dent removal services in competition with Mr. Buckley's other representatives. Mr. Buckley has lost business because of Mr. Seymour's breach of the terms of his Agreement with Mr. Buckley and will continue to lose business and business opportunities unless Mr. Seymour is enjoined from further breaches of the agreement.
 "Based upon the facts set out above, it is the opinion of the court that Mr. Seymour should be enjoined from continuing to breach the terms of the Agreement, pending a hearing on the merits of this cause.
 "It is, therefore, ORDERED, ADJUDGED and DECREED by the Court *Page 557 
that preliminary injunction be, and the same is granted this 27th day of May, 1993, restraining and enjoining Defendant, Richard Seymour, his officers, agents, assigns and all those acting for or in concert with the Defendant from: (i) using for himself or disclosing to competing entities of Mr. Buckley, the process of paintless dent removal as well as any confidential information or processes learned while associated with Mr. Buckley or from using the specialized operational methodologies of Mr. Buckley; (ii) using the trade name Press-A-Dent; (iii) engaging in the business of paintless dent removal within the Alabama counties of Jefferson, Tuscaloosa, Walker, Blount, St. Clair and Shelby; and (iv) from interfering with the business or contractual relationship between Mr. Buckley and his customers.
 "PROVIDED that the Plaintiff first give security in the sum of THREE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($3,500.00) for the payment of costs, damages and reasonable attorney's fees as may be incurred or suffered if the Defendant is found to have been wrongfully enjoined or restrained, such bond to be approved by the Circuit Clerk. Plaintiff may use the bond posted for the 'Temporary Restraining Order' if approved by the Clerk of the court.
"DONE and ORDERED this 27th day of May, 1993.
 "/s/ Jack D. Carl "Circuit Judge"
The issue before us is whether the trial court's finding that irreparable harm would result if the preliminary injunction was not issued was plainly and palpably erroneous. It is settled law that wide discretion is accorded the trial judge hearing a motion for a preliminary injunction and that his action will not be disturbed on appeal unless he abuses his discretion. Chunchula Energy Corp. v. Ciba-Geigy Corp.503 So.2d 1211 (Ala. 1987); Martin v. First Federal Sav. LoanAss'n, 559 So.2d 1075 (Ala. 1990).
This Court has set forth a three-pronged test by which the trial court can review a motion for a preliminary injunction; see, e.g., Howell Pipeline Co. v. Terra Resources, Inc.,454 So.2d 1353, 1356 (Ala. 1984):
 "1. '. . . if [the trial judge] finds that the party has presented a fair question as to the existence of the right to be protected, and further finds that temporary interference to preserve the status quo is convenient and expedient, then he may exercise his discretion and grant the injunction.'
 "2. '. . . An injunction should not be granted unless it is necessary to prevent irreparable injury.
 "3. 'Injunctions . . . will not be granted merely to allay apprehension of injury; the injury must be both imminent and irreparable in a court of law.' "
Quoting Double C. Productions, Inc. v. Exposition Enterprises,404 So.2d 52, 54 (Ala. 1981); see Martin v. First Federal Sav. Loan Ass'n, supra, at 1079. Seymour argues that this three-pronged test was overruled as the standard of review byCity of Birmingham v. Link Carnival, Inc., 514 So.2d 792, 795
(Ala. 1987), which quoted from Johnson v. United States Dep'tof Agriculture, 734 F.2d 774 (11th Cir. 1984).[2] Any confusion created by City of Birmingham v. Link Carnival, Inc., has been set to rest by Martin v. First Federal Sav. LoanAss'n, in which this Court restated the three-pronged test ofHowell Pipeline Co., and Double C. Productions as controlling.
Seymour argues that the trial court erred in issuing this preliminary injunction. His first contention is that the non-competition agreement is unenforceable, citing Ala. Code 1975, § 8-1-1. However, the parties agreed in the contract that Indiana law would control, and there is no statutory equivalent in Indiana law to § 8-1-1, which *Page 558 
voids contracts in general restraint of trade as against public policy. Covenants not to compete are enforceable in Indiana if there is a protectable interest and if the restraint is reasonable in light of legitimate interests sought to be protected. Licocci v. Cardinal Assocs., Inc.,445 N.E.2d 556 (Ind. 1983); Donahue v. Permacel Tape Corp.,234 Ind. 398, 127 N.E.2d 235 (1955); Waterfield Mortgage Co. v.O'Connor, 172 Ind. App. 673, 361 N.E.2d 924 (1977).
As the trial judge correctly noted, the hearing was limited to the question of a preliminary injunction. This appeal is from a preliminary injunction, not from a final decision on the merits.
We have carefully examined the evidence presented at the hearing, and we conclude that the trial court's finding that irreparable harm was likely to result if it denied the preliminary injunction and its finding that temporary interference to preserve the status quo is convenient and expedient were not plainly and palpably erroneous. Therefore, the preliminary injunction is due to be affirmed. Buckley presented a fair question as to the existence of a right that should be protected: he presented evidence that the parties signed the contract; that there was valuable consideration for the contract; that the contract has been breached; that he has suffered irreparable harm from the breach thereof; and that he has no adequate remedy at law.
Further, evidence before the trial judge presented a fair question as to the proprietary nature of the PDR process. The evidence that the PDR process is unique within the automotive body repair industry included Buckley's contract for Seymour's training with Matteson, Inc.; the testimony of a longtime Birmingham automotive body repairman, John Mitchell; and the testimony of Terry Koebbe of Dent Wizard International. Seymour's own witness, Robert L. Smith, admitted that he had learned the PDR process only after agreeing to keep it a secret and paying $6,600. The proprietary nature of the PDR process makes it a proper subject of an injunction. See Indiana Code § 24-2-3-2, defining trade secrets, and Indiana Code § 24-2-3-3, providing for injunctive relief to prevent the misappropriation of trade secrets.
For the reasons stated above, the preliminary injunction is due to be affirmed.
MOTION TO DISMISS DENIED; AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Rule 4(a)(1)(A), Ala.R.App.P., allows an appeal from an interlocutory order "granting, continuing, modifying, refusing or dissolving an injunction." Buckley's motion to dismiss is due to be denied.
[2] The Eleventh Circuit Court of Appeals said in Johnson that four factors must be considered when ruling on a motion for a preliminary injunction: (1) whether there is a substantial likelihood that the plaintiff will prevail on the merits, (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted, (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant, and (4) whether granting the preliminary injunction will serve the public interest. 734 F.2d at 781.