HOUSTON, Justice
(dissenting).
Should G. Clark Smith d/b/a Scorpio and also d/b/a All American Hard Bodies (“Smith”), be enjoined from soliciting, and doing business -with, Diamond Talent, Inc., d/b/a Hollywood’s Hottest Bodies (“Diamond’s”) customers? “That is the question.” The issue is not whether Smith should be enjoined from performing his trade as a performer with a male revue group, which would probably be answered in the negative because of Ala.Code 1975, § 8-1-1. In other words, to dance or not to dance is not the question.
Smith signed three noncompetition agreements while performing his trade with Diamond; in them, he agreed that for two years after he left Diamond and within a 75-mile radius of the places in which he had performed his “duties,” he would not “engage directly or indirectly in any business of male dancing or revue, or all male and/or female dancing performances, productions, or presentations involving burlesque type entertainment.” The trial court did not preliminarily enjoin Smith from engaging in this activity, and its not doing so is not challenged by Diamond in its appeal.
The second paragraph of these three agreements signed by Smith provides, in pertinent part, as follows:
“[Smith] further agrees that for a period of two years after the termination of this Agreement, he will not directly or indirectly (i) induce any customers of [Diamond] to patronize any similar business which competes with [Diamond]; (ii) canvas, solicit or accept similar business from any customer of [Diamond].... ”
It is the failure of the trial court to temporarily enjoin the “breach” of this portion of the noncompetition agreements that Diamond asks this Court to review. Smith testified that since September 1993, he had done business as All American Hard Bodies and had performed in 10 of the clubs in which he had performed while he was with Diamond. Before Smith’s All American Hard Bodies performed in these clubs, these clubs had never used any male revue groups other than those provided by Diamond. The undisputed testimony shows that Diamond allocated considerable resources to identifying potential customers for its all-male revues. Diamond had lists of customers developed, and it solicited and obtained contracts to provide entertainment. Smith became Diamond’s feature attraction, emcee, and contact person with the owners of these customer clubs.
“Injunctive relief in cases of this character is said to be in the nature of a negative specific performance — not specific performance of the continuing obligations of an executory contract for the conduct of business operations. These a court of equity will not, as a rule, undertake to supervise. But specific performance of a lawful covenant not to engage in a rival business, readily accomplished by an injunction forbidding a breach of such covenant.
“Such covenants are often challenged on grounds of public policy because in restraint of trade, tending to monopoly, and injurious to the public having occasion to patronize the business whether strictly public in character, or a private enterprise.
“Throughout our judicial history we have dealt with cases involving this question arising under varying facts. As relates to private business enterprises, a partial restraint of trade by covenants fairly protecting the interests of the covenantee, and not injuriously affecting the public interest in such substantial manner that private rights should yield to the public welfare have been upheld and enforced by injunctive relief.”
Shelton v. Shelton, 238 Ala. 489, 491-92, 192 So. 55, 56-57 (1939). (Citations omitted.)
I am ill prepared to say whether the public interest would be injuriously affected in a substantial manner by Smith’s not being permitted, for a two-year period, to book his *292 male revue in the clubs in which he had performed while associated with Diamond. The record is devoid of evidence of injury to the public interest, and I do not think the Court could accept, through judicial notice, that the withholding of such an esoteric art form from a few clubs throughout the Southeastern United States for a two-year period would injure the public welfare to such an extent that it would require private rights to yield to the public welfare.
The mere fact that I feel that the public welfare is not involved in this controversy and that the controversy involves a form of entertainment that, to say the least, I do not highly prize, does not mean that we should not devote to this ease the time to properly articulate and resolve the legal issues between these litigants. To quote Justice Cardozo in The Nature of the Judicial Process (1921) at 35: “[T]he [seedy] controversies of the litigants are the stuff out of which great and shining truths will ultimately be shaped.”
Alabama has a strong public policy favoring the enforcement of contractual provisions entered into by competent parties. Puckett, Taul & Underwood, Inc. v. Schreiber Corp., 551 So.2d 979, 983 (Ala.1989); Berkel & Co. Contractors, Inc. v. Providence Hospital, 454 So.2d 496, 505 (Ala.1984).
The Constitution of Alabama of 1901, Art. I, § 22, provides “[t]hat no ... law, impairing the obligations of contracts ..., shall be passed by the legislature.” The purpose of this section and of the Contract Clause of the United States Constitution (Art. I, § 10)[1] “⅛ to preserve sacred the principle of the inviolability of contracts against that legislative interference [that] the history of governments has shown to be so imminent, in view of the frequent engendering of popular prejudice, and the consequent fluctuations of popular opinion.’ ” Opinion of the Justices No. 333, 598 So.2d 1362, 1365 (Ala.1992), quoting Edwards v. Williamson, 70 Ala. 145, 151 (1881).
Therefore, any contract that is valid when made cannot be impaired by subsequent legislation. Mays v. Williams, 27 Ala. 267, 271-72 (1855).
By a provision in these contracts, Smith agreed not to induce any customers of Diamond to patronize Smith’s business and not to canvass, solicit, or accept similar business from, any customer of Diamond; section 8-1-1, Ala.Code 1975, does not make those contracts, limited as they are by time and place, invalid. Hoppe v. Preferred Risk Mutual Ins. Co., 470 So.2d 1161 (Ala.1985); Famex, Inc. v. Century Ins. Services, Inc., 425 So.2d 1053 (Ala.1982).
Even so, the trial court’s judgment must be affirmed if Diamond had an adequate remedy at law.
This Court in Corson v. Universal Door Systems, Inc., 596 So.2d 565, 571-72 (Ala.1991), in reversing a judgment awarding damages based on the profits made by an employee who had breached a nonsolicitation agreement, held:
“The correct measure of damages is the amount of loss suffered by [the plaintiff] due to [the defendant’s breach]. The objective is to restore [the plaintiff] to the position it would have occupied had it performed the work.
“Inadequacy of legal remedy may arise from inability to prove the extent of injury with the certainty required for recovery of damages at law....”
Therefore, Diamond must prove that it would have performed the male revues in the bars and clubs in which Smith’s Hard Bodies group performed, if Smith had not breached his agreement, and what Diamond would have netted if it had performed these male revues.
The nature of damages, in my opinion, makes this a case in which Diamond has no adequate remedy at law.
We have affirmed trial court orders granting preliminary injunctive relief in cases involving covenants not to compete and nonsol-icitation provisions (see Seymour v. Buckley, 628 So.2d 554 (Ala.1993); Gross v. QMS, Inc., 613 So.2d 331 (Ala.1993); Harkness v. Scottsboro Newspapers, Inc., 529 So.2d 1000 (Ala.1988); Hoppe v. Preferred Risk Mutual Ins. Co., supra; Shelton v. Shelton, supra; *293 and we have reversed orders denying such relief. Famex, Inc. v. Century Ins. Services, Inc., supra. I am persuaded that the trial court erred in failing to temporarily enjoin Smith from inducing clubs that had been customers of Diamond and in which Smith had performed while associated with Diamond to patronize Smith’s All American Hard Bodies and from canvassing or soliciting such clubs or accepting an engagement by them.
Therefore, I dissent.

. "No state shall ... pass any ... law impairing the obligations of contracts....”