Ormco Corporation appeals the Jefferson Circuit Court's denial of its request for a preliminary injunction stemming from Ormco's action against its former salesperson, Timothy M. Johns, for his alleged breach of a noncompetition agreement. We remand.
 I. Facts
Ormco manufactures and sells orthodontic supplies. From 1999 to August 2002, Johns was employed with Ormco as a regional manager with the exclusive rights to sell Ormco products to orthodontists in a region covering parts of three states: the Florida panhandle, the northern part of Mississippi, and all of Alabama. The names and addresses of the approximately 125 orthodontists in this region were readily available to the general public. Johns would make sales visits to those orthodontists, and between 80 to 90 of them purchased some of their orthodontic supplies from Ormco. Ormco provided Johns with an expense account by which he could build business relationships with the orthodontists through taking them out for meals and purchasing gifts.
Before his employment with Ormco, Johns had had no experience with orthodontics or with the sales of orthodontic supplies. Accordingly, when he first became an Ormco employee, Ormco trained Johns in the orthodontic-supplies industry through seminars as well as through audiotaped and written materials.
In August 2002, Johns accepted a job as a salesperson with GAC International ("GAC"), one of Ormco's primary competitors. GAC solicited business from the orthodontists in the same region in which Johns had worked as a salesperson with Ormco. In his new position with GAC, Johns sells orthodontic supplies to orthodontists in virtually the same region he covered as a salesperson with Ormco. After accepting the position with GAC, Johns began contacting orthodontists in his former Ormco region, informing them that he is now with GAC.
Upon learning that Johns had taken a position with GAC, Ormco sued Johns, alleging various claims relating to an employment agreement Johns had signed with Ormco.[1] The employment agreement contains the following noncompetition agreement, which Ormco alleges Johns is breaching by his activities as a GAC salesperson:
 "I . . . agree that for a period of one (1) year following the termination of my employment, for whatever reason, with SDS [Sybron Dental Specialties, Inc.] *Page 1113 
(or if my employment with SDS is for a period of less than one (1) year, for a period equal to the term of my employment) I shall not, directly or indirectly, alone, or as a member of a partnership or as an officer, director, stockholder, employee or representative of any company, engage in any business activity which is the same or similar to work engaged in by me as an employee of SDS within the territory, wherein I represented SDS and which is directly competitive with the business conducted, or to my knowledge contemplated, by SDS at the time of my termination, unless I have the written consent of SDS. I acknowledge that SDS has the right, from time to time, to change the territory wherein I shall represent SDS."
Along with its complaint, Ormco filed a motion for a temporary restraining order ("TRO") and a motion for a preliminary injunction, seeking to prevent Johns from violating his covenant not to compete during the course of the litigation. The TRO was granted, but was later dissolved and was supplanted by an order from the trial judge prohibiting Johns from "contacting or soliciting business from Ormco customers that he solicited, contacted, or did business with while employed at Ormco."
Following expedited discovery, both sides submitted briefs on Ormco's motion for a preliminary injunction. After an evidentiary hearing, the trial court requested additional briefing on whether Ormco had an adequate remedy at law and whether Ormco could demonstrate immediate and irreparable injury. Following the submission of briefs on those issues, the trial court denied the motion for a preliminary injunction, finding that Ormco had failed to present sufficient evidence to demonstrate irreparable injury. Ormco appeals. See Ala.R.App.P. 4(a)(1)(A) (providing for appellate review as of right from "any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction").
 II. Analysis
A plaintiff seeking a preliminary injunction has the burden of demonstrating
 "(1) that without the injunction the plaintiff would suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the defendant by the injunction would not unreasonably outweigh the benefit accruing to the plaintiff."
Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala. 1994). Here, the trial court stated as its reason for refusing to grant the preliminary injunction that Ormco failed to produce sufficient evidence that without the injunction it would suffer irreparable injury stemming from Johns's activities during the litigation of Ormco's action against Johns.[2]Id.
"'Irreparable injury' is an injury that is not redressable in a court of law through an award of money damages." 646 So.2d at 587 (citingTriple J Cattle, Inc. v. Chambers, 551 So.2d 280 (Ala. 1989)). However, "courts will not use the extraordinary power of injunctive relief merely to allay an apprehension of a possible injury; the injury must be imminent and irreparable in a court at law." Martin v. City of Linden,667 So.2d 732, 736 (Ala. *Page 1114 
1995); see also Borey v. National Union Fire Ins. Co. of Pittsburgh,934 F.2d 30, 34 (2d Cir. 1991) (stating that "a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction"). The primary focus of the parties' briefs to this Court is their disagreement over the nature of the evidence required to demonstrate "irreparable injury."
 A. Ormco's Argument
Ormco contends that irreparable injury should be inferred when a violation of a noncompetition agreement is alleged and when there has been an initial showing that the agreement is enforceable and that the employer has a protectible interest. Accordingly, Ormco argues that if such a showing is made, irreparable injury is established and it need present no further evidence as to that element of injunctive relief. Ormco acknowledges that this Court has not explicitly adopted this inference of irreparable injury in a case involving the alleged violation of a noncompetition agreement; however, Ormco cites several decisions of other jurisdictions that appear to indicate that the courts in those jurisdictions either explicitly use that inference or at least appear to be willing to find irreparable injury easily established in a case involving the alleged violation of a noncompetition agreement: TicorTitle Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999) ("New York cases in the covenant-not-to-compete context apparently assume an irreparable injury to plaintiff"); JAK Prods., Inc. v. Wiza, 986 F.2d 1080, 1084 (7th Cir. 1993) (under Indiana law, "[w]henever an employee uses his experience gained from an employer in violation of a reasonable covenant not to compete, irreparable injury occurs and injunctive relief is appropriate"); Highdata Software Corp. v. Kothandan, 160 F. Supp.2d 167,168 (D.N.H. 2001) (stating that "[a]ny significant violation of an enforceable noncompetition and nondisclosure agreement causes irreparable harm to the party seeking to promptly enforce the agreement"); AmericanExpress Fin. Advisors, Inc. v. Scott, 955 F. Supp. 688, 693 (N.D.Tex. 1996) ("[i]n Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury," because "[i]n a situation where trade secrets and goodwill are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable" and "damages [will be] impossible to calculate"); Harrison v. Albright, 40 Colo. App. 227, 231-32,577 P.2d 302, 305 (1977) ("irreparable injury is presumed from the breach of [a noncompetition] clause, and . . . the remedy at law is presumed inadequate"); McRand, Inc. v. Van Beelen, 138 Ill. App.3d 1045, 1054,486 N.E.2d 1306, 1313, 93 Ill. Dec. 471, 478 (1985) ("Once a protectable interest is established, irreparable injury is presumed to follow if the interest is not protected."); Osage Glass, Inc. v. Donovan, 693 S.W.2d 71,75 (Mo. 1985) ("If the [noncompetition] covenant is lawful and opportunity for influencing customers exists, enforcement is appropriate.").
Ormco points out that this Court has never held a trial court in error for finding that an employer demonstrated irreparable harm stemming from an employee's breach of a noncompetition agreement, so as to justify a preliminary injunction. See, e.g., Seymour v. Buckley, 628 So.2d 554
(Ala. 1993); Gross v. QMS, Inc., 613 So.2d 331 (Ala. 1993); and Harknessv. Scottsboro Newspapers, Inc., 529 So.2d 1000, 1003 (Ala. 1988). However, this fact is of little persuasive effect, given that this Court reviews a trial court's ruling on a request for a preliminary injunction with great deference to the decision of the trial court. See Seymour, 628 So.2d at 557 ("The issue *Page 1115 
before us is whether the trial court's finding that irreparable harm would result if the preliminary injunction was not issued was plainly and palpably erroneous. It is settled law that wide discretion is accorded the trial judge hearing a motion for a preliminary injunction and that his action will not be disturbed on appeal unless he abuses his discretion." (citing Chunchula Energy Corp. v. Ciba-Geigy Corp., 503 So.2d 1211 (Ala. 1987), and Martin v. First Fed. Sav. Loan Ass'n, 559 So.2d 1075 (Ala. 1990))); Gross, 613 So.2d at 332-33 ("'It is well established that the issuance of injunctive relief is within the sound discretion of the trial court, especially when . . . the facts are in dispute and the evidence is presented ore tenus.'" (quoting Davis v. Hester, 582 So.2d 538, 540 (Ala. 1991) (citation omitted))); Harkness, 529 So.2d at 1002 ("This Court adheres to the principle that the grant of a preliminary injunction will not be reversed on appeal absent an abuse of discretion. This abuse must be of such a nature as to constitute or manifest injustice unless rectified on appeal.").
 B. Johns's Argument
On the other hand, Johns correctly points out that Alabama law recognizes no inference of irreparable injury from the alleged violation of a noncompetition agreement; he argues that this Court should not now recognize such an inference. Johns contends simply that this case should be treated as any other request for injunctive relief, that is, that the burden is on Ormco to demonstrate that it will suffer immediate and irreparable injury during the litigation if Johns is not enjoined from working as a salesperson for GAC. See Perley, 646 So.2d at 587. Johns argues not only that Ormco failed at the hearing on its motion for a preliminary injunction to produce sufficient evidence of irreparable injury, but also that Johns effectively refuted what evidence Ormco did present.
 C. Considerations Regarding Irreparable Injury, Noncompetition Agreements, and Former Employee Salespersons
We recognize that there is frequently a close nexus between the threat of irreparable injury to an employer and a violation of a noncompetition agreement by a former employee,[3] especially when that former employee is a salesperson who is planning to sell in the same geographic area he or she covered for the former employer. Typically, those noncompetition agreements seek to protect and preserve important interests, such as customer relationships (e.g., customer goodwill built by the former salesperson on behalf of the employer) and confidential business information (such as trade secrets), that are of great value to an employer. See Booth v. WPMI Television Co., 533 So.2d 209, 211 (Ala. 1988) (acknowledging the value of customer relationships and confidential information when analyzing a noncompetition agreement) (citing Devoe v.Cheatham, 413 So.2d 1141, 1143 (Ala. 1982), and Restatement (Second) ofContracts § 188, Comment B (1979)); see, e.g., Guidant Sales Corp.v. George (No. CIV. 01-1638) (D.Minn., Nov. 19, 2001) (not published in F. Supp.) (granting a preliminary *Page 1116 
injunction to enforce a covenant not to compete regarding sales of cardiac-rhythm management devices where there was sufficient evidence indicating that, among other things, the "sales representative's personal relationship with a particular physician has great impact on the sale of [cardiac-rhythm management] devices"); Frontier Corp. v. TelcoCommunications Group, Inc., 965 F. Supp. 1200, 1203 (S.D.Ind. 1997) ("Sales depend on price and the quality of service, of course, but a sales representative's personal relationship and good will with a customer is often critical in determining a customer's choice of long distance carriers in this competitive market where it is so difficult to distinguish one `product' from another."). By their very nature, those interests, when damaged through competition in violation of a noncompetition agreement, are not always easily repaired. The force of these considerations presses in favor of our adoption of an inference of irreparable injury when a former employee salesperson is accused of violating an enforceable noncompetition agreement by selling in the same geographic location in which he or she worked as an employee of the former employer.
However, we also recognize that there are situations where those interests, while they might be held by the employer, are not primarily tied to the particular former employee salesperson sought to be enjoined. For example, with regard to customer relationships and goodwill, the customer may not make its purchasing decisions based on a personal relationship with the former employee salesperson, but rather based on the quality or particular characteristics of, and a personal preference for, the employer's products.[4] This "dependence" factor (i.e., whether the customer is really dependent on or solidly committed to a particular salesperson) may be determined by, among other things, the level of the customer's knowledge and expertise with regard to the products being sold, and the extent to which the customer, if at all, trusts the salesperson to make actual purchasing decisions for the customer.
Also, with regard to the interest of confidential business information, that information, while important, might not be known by the employee salesperson, in which case the protectible interest of confidentiality is held by the employer and not *Page 1117 
the employee salesperson. Furthermore, the employee may know of certain business information, but that information is not truly confidential because it is legally attainable by the employer's competitors (in which case the employer loses its protectible interest in the confidentiality of the information). See, e.g, Iroquois Indus. Corp. v. Popik,91 Ill. App.3d 505, 508, 415 N.E.2d 4, 7, 47 Ill. Dec. 279, 282 (1980) ("The instant record shows that the names of the customers were and are readily ascertainable by reference to a telephone or industrial directory. [The employee] developed 90% to 95% of the customers himself, without reliance upon [the employer]."); Image Supplies, Inc. v.Hilmert, 71 Ill. App.3d 710, 714, 390 N.E.2d 68, 72, 28 Ill. Dec. 86, 90 (1979)) ("[A]ny of plaintiff's competitors could readily obtain the names and addresses of those firms interested in printing supplies. The names were listed in the telephone directory and in professional publications."); see also Public Sys., Inc. v. Towry, 587 So.2d 969, 973
(Ala. 1991) (in the context of a claim under the Alabama Trade Secrets Act, Ala. Code 1975, § 8-27-1 et seq., "[i]t is axiomatic that once made public, [a] customer list has no claim to trade secret protection").
In these or similar situations, it appears that irreparable injury should not be inferred from the alleged violation of a noncompetition agreement.
We are persuaded that the best approach to take account of these considerations is the approach taken by the Minnesota courts, which recognize a rebuttable inference of irreparable injury in cases where a former employee salesperson is actively competing with his former employer in the same geographic area in violation of a noncompetition agreement:
 "Irreparable harm to an employer from a former employee's competing business is generally not inferred, as it is where competition follows the sale of a business. See Note, Employment Contracts: Covenants Not to Compete in Minnesota, 9 Wm. Mitch. L. Rev. 388, 394 (1984). In Menter Co. v. Brock, 147 Minn. 407, 410, 180 N.W. 553, 554 (1920), the supreme court indicated the necessity of some proof of irreparable damage from the former employee's breach of a covenant not to compete:
 "'We think the breach of a like covenant in an employment contract does not so readily indicate irreparable injury to the employer. Injury is not shown by the mere fact that the employee has left the service and has entered the employ of a rival concern.'
 "The supreme court has inferred harm, however, where the former employee was a salesman who began selling competing goods in the same trade area. Thermorama, Inc. v. Buckwold, 267 Minn. 551, 552, 125 N.W.2d 844, 845 (1964). Harm has also been inferred in the case of professional employees assumed to acquire a personal influence over patients or clients of their employer. See Granger v. Craven, 159 Minn. 296, 199 N.W. 10
(1924) (physician employed by another doctor).
 "In Thermorama, the case relied on by respondent, the employer alleged
 "'a systematic solicitation of plaintiff's customers by defendant and active participation by him in a competitive business enterprise as a salesman . . . .'
 "Thermorama, 267 Minn. at 552, 125 N.W.2d at 845. The court gave little weight to the employee's counteraffidavit stating he had not competed for his employer's customers and `den[ying] there are any customers who belong exclusively to any particular seller.' Id. *Page 1118 
 "Hefty [the former employee salesman of Rosewood] admits contacting institutions which bought mortgages from Rosewood while he was employed there. Like Buckwold in Thermorama, he denies that any of these institutions are exclusive customers, of Rosewood or any other mortgage company. Here, however, the evidence, which is limited to his deposition, not only supports this claim, but indicates that Hefty had no `personal hold upon the good will of the business,' Menter[,] 147 Minn. at 410, 180 N.W. at 555, which would support an inference of harm.
 "Although Hefty had `contacts' within institutions buying on the secondary market, they did not provide a reliable `clientele' but merely assured his company's mortgages would be considered. As in many financial markets, pricing rather than personal contacts predominates in market decisions, and prices appear to have been set by the large institutions. Thus, these large financial institutions dominated the market, at least as appears from the record here, unlike the retail store owners in Thermorama who bought from manufacturers and wholesalers where `personal contact' carried great weight.
 "[Rosewood] failed to present any affidavits, depositions or other preliminary evidence as to characteristics of the secondary market on which to base an inference of harm to it from the competitive activities of Hefty. . . ."
Rosewood Mortgage Corp. v. Hefty, 383 N.W.2d 456, 459 (Minn.Ct.App. 1986).
 "Irreparable injury can be inferred from the breach of a restrictive covenant if the former employee came into contact with the employer's customers in a way which obtains a personal hold on the good will of the business. Menter Co. v. Brock, 147 Minn. 407, 410, 180 N.W. 553, 554-55 (1920); see also Thermorama, Inc. v. Buckwold, 267 Minn. 551, 552-53, 125 N.W.2d 844, 845 (1964) (systematic solicitation of former employer's customers supports inference of irreparable harm). However, the inference may be rebutted by evidence that the former employee has no hold on the good will of the business or its clientele. See Rosewood Mortgage Corp. v. Hefty, 383 N.W.2d 456, 459-60 (Minn.Ct.App. 1986).
 "The evidence in this case sufficiently supports the court's inference of irreparable harm. Fosshage [a former employee of Webb Publishing Company] worked closely with Webb's clients, considered them friends, and at least one client considered him part of `a winning team.' His success in soliciting their business demonstrates the `personal hold' he had on them. Loss of American Cyanamid and Fosshage's other customers would cost Webb 45 percent of its custom publishing revenue, and the damage to its business reputation in that area would be substantial and not easily measured."
Webb Publ'g Co. v. Fosshage, 426 N.W.2d 445, 448-49 (Minn.Ct.App. 1988).[5]
Under this approach, when seeking a preliminary injunction to enforce a noncompetition agreement against a former employee salesperson, the employer, to make use of the inference, must make an prima facie showing 1) that a valid *Page 1119 
noncompetition agreement exists, 2) that the employer has a protectible interest, and 3) that the former employee salesperson is actively competing with his or her former employer in the same geographic area in violation of the noncompetition agreement.
Under Ala. Code 1975, § 8-1-1(a), agreements that restrain a person from exercising a lawful business are generally void. However, §8-1-1(b) provides an exception to that rule and allows the enforcement of a noncompetition agreement entered into between an employer and an employee:
 "One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein."
Protectible interests certainly include, but are not limited to, those mentioned above: valuable customer relationships and goodwill that have been established by the defendant as an employee of the plaintiff and confidential information, such as trade secrets and confidential business practices.
If the trial court is satisfied that the employer has made the prima facie showing described above, then a rebuttable inference arises that the employer will suffer irreparable injury unless an injunction issues. However, the employee can rebut this inference by producing evidence that the competition of the employee will not irreparably injure the employer. As discussed above, such evidence could include evidence indicating that the customers' purchase decisions were based primarily on an independent preference for the particular goods[6] of the employer rather than on the relationship between the customer and the salesperson (so that the salesperson has no substantial "personal hold" on the customers, see Rosewood Mortgage Corp., 383 N.W.2d at 459; Webb Publ'gCo., 426 N.W.2d at 448-49), or evidence indicating either that the salesperson did not have confidential information or that the information was not really confidential.[7]
If the trial court is satisfied that the employee has produced evidence sufficient to rebut the inference that continued competition during the course of the litigation will result in irreparable injury to the employer, the burden shifts back to the employer to produce sufficient evidence (beyond that necessary for the prima facie showing described above) of irreparable injury.
 D. Application to this Case
There is evidence in the record as to the disputed issues material to the above analysis, including evidence regarding 1) whether Ormco's customers make their purchases based primarily on their relationship with the salesperson or on the quality of the product, and 2) whether Johns was in possession of any confidential Ormco information (i.e., information not otherwise attainable by GAC or other competitors) that he could use to acquire Ormco's customers. However, given that *Page 1120 
our decision adopts a new framework for analyzing those types of irreparable-injury claims, and because Ormco appears to have relied somewhat on an unrebuttable inference of irreparable injury before the trial court, we think it prudent to withhold judgment in order to allow the trial court to first determine whether the element of irreparable injury is satisfied under the framework described above. Whether another hearing or additional evidence is needed is a matter within the trial court's discretion.
 III. Conclusion
Therefore, we remand the case to the trial court for proceedings consistent with this opinion.
REMANDED.
SEE, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and LYONS and WOODALL, JJ., dissent.
[1] The employment agreement was actually between Johns and Sybron Dental Specialties, Inc. ("SDS"), and "each of its divisions and subsidiary corporations." Johns argues that Ormco is not a party to the contract. However, it is undisputed that Ormco was a subsidiary corporation of SDS at the time the employment agreement was executed. Therefore, Johns's argument is without merit.
Additionally, Johns argues that even if Ormco is a party to the employment agreement, Ormco was not registered to do business in Alabama and therefore, under Alabama's "door-closing" statute, Ala. Code 1975, §10-2B-15.02(a), cannot enforce the provisions of Johns's employment agreement. However, the undisputed fact that Johns's employment with Ormco was explicitly interstate in nature (i.e., he was hired to sell orthodontic supplies in a three-state region) prohibits the application of § 10-2B-15.02(a). See North Alabama Marine, Inc. v. Sea Ray Boats,Inc., 533 So.2d 598, 601 (Ala. 1988) ("A non-qualified foreign corporation is not barred from enforcing its contracts in Alabama when its activities within this state are incidental to the transaction of interstate business.").
[2] Given the fact that Ormco seeks only a preliminary injunction, the trial court was (and this Court is) concerned only with evidence indicating that Ormco would suffer irreparable injury during the course of the proceedings (from the filing of the complaint to the entry of a judgment or dismissal).
[3] In fact, some states have enacted laws explicitly reflecting this close connection, specifically providing that irreparable injury is evident from the breach of a valid noncompetition agreement. See, e.g., Fla. Stat. Ann. § 542.33(2)(a) (West 2002) (providing that, when a noncompetition agreement exists, "use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined"); and La. Rev. Stat. Ann. § 23:921(G) (West 2003) (providing that additional proof of irreparable harm is not necessary for injunctive relief in the event of the breach of a covenant not to compete).
[4] Another way this concept is expressed in the context of noncompetition agreements is in terms of the "impact" of the violation of the agreement not to compete on the former employer. In that respect, it is important to note that while there may be some impact to an employer caused by the departure of an employee salesperson, it is not the impact caused merely by the employee's departure but the impact caused by the former employee's working for a competitor that is important. If there would not be much difference between the two "impacts," the argument that irreparable injury will result from the former employee salesperson's working for a competitor is much diminished. See, e.g., Security RugCleaning Co. v. Sams (No. C-970641) (Ohio Ct. App., Jan. 30, 1998) (unpublished) ("[The employer] presented evidence that its business decreased after [the former employees'] departure. However, [the employer] presented no evidence from which it could be inferred that the decline in business was due to [the former employees'] competition with [the employer], and not due to the mere fact that these two employees no longer worked for [the employer] and that both of the remaining employees of the division also left."); Licocci v. Cardinal Assocs., Inc.,432 N.E.2d 446, 455 (Ind.Ct.App. 1982) ("The loss of experienced salesmen diminished temporarily the value of [the employer] as a whole and in the short-term removed the company from the marketplace. The loss of good will under such circumstances was a risk of business, but expropriation of that good will by former employees to exploit its competitive power was not."), vacated on other grounds, 445 N.E.2d 556 (Ind. 1983).
[5] Although we recognize that unpublished decisions of Minnesota state courts typically are not to be cited as precedent, see Minn. Stat. Ann. § 480A.08(3) (West 2002), we note the following unpublished decisions merely as examples relevant to our discussion: BFI-Portable Servs., Inc.v. Kemple (No. C5-89-1172) (Minn.Ct.App., Nov. 21, 1989) (unpublished); and Investment Rarities, Inc. v. Miles (No. CO-88-1087) (Minn.Ct.App., Feb. 28, 1989) (unpublished).
[6] See, e.g., Rosewood Mortgage Corp., 383 N.W.2d at 459 (discussing how "pricing rather than personal contacts predominates in market decisions").
[7] For example, see Investment Rarities Inc., supra note 5 (holding that a former employee defendant rebutted an inference of irreparable injury stemming from his use of a Christmas card list to notify former clients of his job change when, among other things, "there [was] evidence that [the employer's] secrecy patterns were otherwise compromised"). See Minn. Stat. Ann. § 480A.08(3).