These appeals are from a judgment enjoining foreclosure of a mortgage on certain real property until the amount due on the note is determined in an underlying case.
Triple J Cattle, Inc. ("Triple J"), purchased from Billy and Betty Carter a business known as C.L. Chambers and Son, Inc. (a livestock auction company), including the real estate, located in Pike County, on which the business was operated. That real property was subject to a first mortgage to First Alabama Bank of Troy and a second mortgage to Robert F. and Claudean F. Chambers, the persons from whom the Carters had purchased the business.
The sales agreement between Triple J and the Carters provided in pertinent part:
 "(A) Triple J assumes a Fifty Thousand Dollar ($50,000.00) loan currently outstanding at the First Alabama Bank of Troy, Alabama.
 "(B) Triple J assumes the responsibility of that certain second mortgage payable to Robert Chambers and [his] mother, Claudean Chambers, at a maximum amount of Forty Thousand Dollars ($40,000.00) or whatever lesser sum might be negotiated between the parties."
The Carters executed a deed to Triple J containing the following mortgage-assumption provision:
 "The grantee [Triple J] herein, by its acceptance of this deed, hereby assume[s] and agree[s] to pay the mortgage indebtednesses outstanding against this property as part of the consideration of this conveyance; one of said mortgages being from Billy Carter and wife, Betty Joan Carter, to First Alabama Bank . . . and [the] other mortgage being from Billy Carter and Wife, Betty Joan Carter, to Robert F. Chambers and Claudean F. Chambers. . . ."
Triple J made the payments due to First Alabama Bank; however, no payments were made by Triple J or the Carters on the second mortgage held by the Chamberses because of a dispute as to the amount due thereunder.
The Chamberses sued the Carters on the promissory note that was executed between the parties when the Carters purchased the livestock auction business from the Chamberses. The Carters counter-claimed, contending that their execution of the note was induced by fraudulent misrepresentations on the part of the Chamberses regarding the amount of the accounts receivable, inventory, liabilities, and other assets of the business. That suit between the Chamberses and the Carters is still pending in the Pike County Circuit Court.
Two years later, the Chamberses commenced foreclosure proceedings against Triple J, and these proceedings are the subject of this appeal. Triple J filed a petition for an injunction against foreclosure, contending:
 "Triple J has a right to pay off the debt due on said mortgage being foreclosed at any time before foreclosure, but cannot determine that correct amount until the amount is settled in the civil action by Chambers against Carter. Triple J is ready, willing and able to pay the correct amount of the mortgage debt when ascertained.
 "Triple J will suffer irrevocable damage if Chambers is allowed to foreclose the mortgage before the correct amount due on the mortgage has been ascertained and before Triple J has an opportunity to pay said debt prior to foreclosure."
Triple J subsequently amended its petition, contending that the Chamberses were estopped from foreclosing their mortgage from Triple J, based on the doctrine of election of remedies, because they had sued the Carters on the note. Triple J argued *Page 282 
that the Chamberses' suit on the note was an election to forego foreclosure of the mortgage.
The trial court found that the Chamberses had made an inconsistent election of remedies, and held that, because the amount due on the note held by the Chamberses is in controversy, the injunction was due to be granted, conditioned on Triple J's posting of a bond in the amount of $30,000 until the correct amount due on the note secured by the mortgage could be ascertained.
Triple J appeals, contending that the Chamberses are forever barred from foreclosing the mortgage because they elected to sue the Carters on the note before attempting to foreclose the mortgage against Triple J.
The Chamberses cross-appeal, contending that they are not barred by the doctrine of election of remedies from foreclosing and that the injunctive order is due to be reversed because Triple J allegedly failed to meet its burden of proving irreparable injury and because the trial judge failed to give the reasons for issuing the injunction, as required by Rule 65(d)(2), A.R.Civ.P.
We hold that the order enjoining foreclosure until the amount due on the note is determined is due to be affirmed and that the Chamberses are not barred from foreclosing after that determination is made if the amount determined to be due is not paid.
Upon a default by the mortgagor, the mortgagee has three remedies, and he may pursue any one or all of them until the debt is satisfied. He may sue for the debt, sue for the property, and he may foreclose the mortgage; unless special circumstances exist, the trial court may not enjoin him from pursuing these remedies concurrently. Micou v. Ashurst, 55 Ala. 607
(1876). He is not required to foreclose the mortgage first, but may bring his action on the note alone. Morris v. FidelityMortgage Bond Co., 187 Ala. 262, 65 So. 810 (1914). A mortgagee, absent an agreement to the contrary, may proceed on all of his remedies at once, or may use those of his remedies that will give him the easiest recovery against the mortgagor.Id. He may obtain a judgment on his note secured by the mortgage and thereafter maintain a separate action to foreclose the mortgage. However, although separate recoveries may be pursued under the different remedies, the mortgagee may have only one satisfaction of the debt. The satisfaction under one remedy precludes satisfaction of the debt under the others. See, generally, 59 C.J.S. Mortgages, §§ 342 and 485 (1949). In this case, the Chamberses have not received anything in satisfaction of the debt, for not even a judgment on the note has been entered in their favor.
This Court held in Elliott v. Vance, 239 Ala. 180,194 So. 515 (1940), that for the doctrine of election of remedies to bar a person from seeking a co-existing remedy, the remedies sought must be so inconsistent that the assertion of one involves a negation or repudiation of the other. Neither the Chamberses' suit on the note nor the institution of the foreclosure proceedings was inconsistent with the claim for the debt owed. Therefore, the doctrine of election of remedies is inapplicable under these facts.
The primary reason for issuing an injunction is to prevent an irreparable injury, i.e., one not redressable with pecuniary damages in a court of law. Teleprompter of Mobile, Inc. v.Bayou Cable TV, 428 So.2d 17 (Ala. 1983). We believe that the trial court acted within its sound judicial discretion in granting the injunction.
Triple J has demonstrated that it will suffer irreparable injury. Under the facts of this case, without an injunction Triple J would be faced with the foreclosure of the property upon which its business is located. If foreclosure is allowed, Triple J will not know the amount required to redeem the property until the Chamberses and the Carters settle on an amount, or a final judgment is rendered determining the amount due in the suit between the Chamberses and the Carters. That determination could occur after Triple J's one-year statutory redemption period. Triple J would then be left without a remedy. Furthermore, *Page 283 
its ongoing business would be detrimentally affected by the foreclosure, and perhaps would even be closed down. Therefore, the possible injury to Triple J is imminent and irreparable.
There is no evidence of bad faith on the part of Triple J. It has made the required payments on the first mortgage and has established a profit-making business, and there is no evidence that it is not satisfying the business's other obligations. Triple J has stated in its petition that it is ready, willing, and able to pay the debt, upon a determination of the amount. As proof of this, it filed a $30,000 bond with the court, guaranteeing payment.
The respective hardship of the parties may be considered in preliminary injunction actions. See, Adams v. Farlow,516 So.2d 528 (Ala. 1987), cert. denied sub nom. Board of Operatives ofthe American Cast Iron Pipe Co. v. Board of Management of theAmerican Cast Iron Pipe Co., 485 U.S. 1010, 108 S.Ct. 1477,99 L.Ed.2d 705 (1988). Triple J has demonstrated that it stands to lose substantially without the injunction, but the Chamberses have produced no evidence that the granting of the injunction would cause them injury. The suit on the note between the Chamberses and the Carters had been pending for two years before the Chamberses sought foreclosure against Triple J.
The Chamberses contend that the trial court's order violates Rule 65(d)(2), A.R.Civ.P. We disagree. Rule 65(d)(2) requires that the trial court's order granting an injunction set forth the reasons for its issuance, describe in reasonable detail the act sought to be enjoined, and the parties bound by the order.
The purpose of Rule 65(d)(2) is to ensure that the statement of the acts to be restrained and of the persons subject to the order is clear and unambiguous, thus allowing proper compliance with the court's order. We find that the trial court's order in this case complies with Rule 65(d)(2). It states that the reason for the injunction prohibiting foreclosure is that the amount due on the note is in controversy. The order states that the act to be enjoined is foreclosure of the mortgage by the "defendants" (the Chamberses). The order is clear and unambiguous and describes in reasonable detail the act enjoined. The requirements of Rule 65(d)(2), A.R.Civ.P., were met.
After careful consideration of the evidence and the arguments presented by the parties, we affirm the judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.