Rel: 09/12/2014

Notice: This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1130742
_____

**Ex parte B2K Systems, LLC; Ingenuity International, LLC; and Robert A. Przybysz**

**PETITION FOR WRIT OF MANDAMUS**

(In re:   Nannette Smith

v.

B2K Systems, LLC; Ingenuity International, LLC; and Robert A. Przybysz)

(Jefferson Circuit Court, CV-14-00163)

MAIN, Justice.

1130742

B2K Systems, LLC, a Delaware limited-liability company; Ingenuity International, LLC, a foreign corporation ("Ingenuity"); and Robert A. Przybysz (hereinafter referred to collectively as "the petitioners") petition for a writ of mandamus seeking enforcement of an outbound forum-selection clause and the reversal of a preliminary injunction entered by the Jefferson Circuit Court. With respect to the forum-selection-clause issue, we deny the petition. With regard to the preliminary injunction, we treat the petition as a timely filed direct appeal pursuant to Rule 4(a), Ala. R. App. P., and we reverse and remand.

## I.   Facts and Procedural History

This matter arises from a business dispute. The respondent, Nannette Smith, was the founder and president of, and the sole shareholder in, B2K Systems, Inc. ("B2K Inc"), a Birmingham-based Alabama corporation that developed specialized software for point-of-sale retailers. In August 2012, B2K Inc sold its assets to B2K Systems, LLC ("B2K LLC"), a Delaware corporation set up for the purpose of acquiring B2K Inc's assets. The purchase price totaled $6,900,000, with B2K Inc to receive an initial payment of $200,000 and the

2

remainder to be paid in monthly installments to B2K Inc and as salaries paid to Smith and her son, Josh Smith. Although the purchase price was to be paid incrementally, according to the asset-purchase agreement B2K Inc's assets, including its intellectual property, were to be transferred to B2K LLC immediately upon closing in September 2012.

The asset-purchase agreement referenced various "related agreements" to be executed as part of the purchase. Those related agreements included a promissory note to be executed by B2K LLC in favor of Smith and a guarantee of that note executed by Ingenuity, a holding company owning the majority shares of B2K LLC. The asset-purchase agreement also called for B2K LLC and Smith to execute a five-year employment agreement naming Smith president of B2K LLC and providing an annual base salary of $200,000. Smith was also granted 20% ownership of B2K LLC.

On September 1, 2012, Przybysz, the managing member and CEO of B2K LLC and Ingenuity, executed the promissory note on behalf of B2K LLC and the guaranty agreement on behalf of Ingenuity. That same day, B2K LLC and Smith entered into the employment agreement, pursuant to which Smith became president

of B2K LLC. Each agreement -- the asset-purchase agreement, the employment agreement, the promissory note, and the guaranty agreement -- contained a forum-selection clause. Although the scope of the forum-selection clauses are in dispute, they, at the least, established Kent County, Michigan, as a permissible forum for resolution of disputes arising from the various agreements. All the agreements provided that the law of the State of Delaware would govern.

Following the purchase, relations between Smith and B2K LLC deteriorated. B2K LLC stopped making the monthly payments on the promissory note. On March 3, 2014, Przybysz, as the managing member of B2K LLC, acted to terminate Smith's employment with B2K LLC. Przybysz met with Smith in B2K LLC's Birmingham office and handed her a termination letter, which explained that the termination of her employment was "for cause." The same day, B2K LLC filed for and received a temporary restraining order ("TRO") from the Kent, Michigan, Circuit Court. The TRO enjoined Smith from

"(a) entering onto any premises owned, leased, and/or operated by [B2K LLC]; (b) contacting [B2K, LLC]'s employees, vendors, and/or current customers, (c) using or disclosing [B2K LLC]'s confidential information, including passwords, logins, and/or

1130742

client lists; and (d) soliciting any business from [B2K LLC]'s current clients and customers."

Along with its request for the TRO, B2K LLC filed a complaint in the Kent Circuit Court alleging Smith had misrepresented the status of B2K LLC's projects, had squandered resources on nonapproved budgeted expenses, had misappropriated funds and equipment, had prepared fraudulent expense reports, had sent fraudulent invoices to clients, and had misrepresented insurance records. The complaint alleged breach of Smith's employment agreement with B2K LLC, breach of fiduciary duty, and breach of the asset-purchase agreement.

On March 4, 2014, the day after the Michigan TRO was issued, Smith filed a complaint and a petition for a TRO in the Jefferson Circuit Court ("the trial court"), seeking her own TRO against the petitioners and also seeking monetary damages for breach of the employment contract and the promissory note. Smith's complaint alleged that B2K LLC had failed to make the monthly payments required under the note and that B2K LLC had failed to honor her employment agreement. Smith requested a TRO restraining the petitioners as follows:

"a. Precluding the [petitioners] from entering, visiting, or otherwise disturbing the business

5

1130742

of B2K LLC and any other business located on the premises of [B2K LLC's office location];

"b. Precluding the [petitioners] from removing any assets, tangible or intangible, including software, hardware, property, intellectual property, or any other asset contemplated by the purchase agreement referenced herein;

"c. Precluding the [petitioners] from enforcing the out-of-state order;

"d. Precluding the [petitioners] from copying, scanning, altering, changing, running, removing, using, destroying, and/or wasting any code, intellectual property, software, passwords, computer programs, computers, servers, tablets, printers, cds, storage devices, flash drives, external storage, internal storage, hard drives, external hard drives, USB drives, or any other item that stores information;

"e. Further, the [petitioners] shall be precluded from interfering with [Smith] and any other employees of B2K LLC from the normal operation of their business including the use of the assets in the furtherance of the business;

"f. The [petitioners] are precluded from terminating Smith from her employment without cause until a hearing on the merits may be had;

"g. All parties shall maintain the status quo until such time as a hearing on the merits can be preformed and a trial on the merits for the other claims obtained;

"h. Any other and further relief that this Court deems appropriate."

On March 4, the trial court issued the TRO and set a hearing on a preliminary injunction for March 12, 2014. That same day, the petitioners moved to dissolve the TRO and to dismiss Smith's lawsuit, arguing, in part, that under the various forum-selection clauses contained in the parties' agreements, either the Kent, Michigan, Circuit Court or the United States District Court for the Western District of Michigan were the exclusive forums for Smith's lawsuit. On March 10, Smith filed a response in opposition to the petitioners' motion to dismiss. Smith argued that venue in the trial court was proper, that the forum-selection clauses were permissive rather than mandatory, and that Michigan was a seriously inconvenient forum. On March 11, 2014, Smith filed an amended complaint adding two additional claims, one alleging breach of the asset-purchase agreement and another alleging breach of the guaranty agreement.

On March 12, 2014, the trial court conducted an evidentiary hearing, which included the testimony of Smith, Przybysz, and other witnesses. On March 26, 2014, the trial court issued a preliminary injunction. In its order, the trial court addressed and rejected the petitioners' argument

7

1130742

that Michigan was the proper forum for the dispute. The trial court noted that the forum-selection clauses were "inartful" and concluded that venue was proper in both Alabama and Michigan.

The preliminary injunction essentially awarded total control of B2K LLC and its assets to Smith. The injunction instructed the petitioners to reinstate Smith as president of B2K LLC, to pay her salary, to provide operating expenses, and to refrain from interfering with or entering the Alabama business operations of B2K LLC until further order of the court. Specifically, the preliminary injunction required as follows:

> "a. The [petitioners] shall immediately formally reinstate Smith to her position of President of B2K LLC and shall pay her according to the terms and conditions of her employment agreement.
>
> "b. The [petitioners] shall provide an operating account for Smith with check writing authority and properly fund the operational expenses of B2K LLC.
>
> "c. The [petitioners] shall not take any adverse employment action against Smith, or other employees, while this injunction remains in force and effect absent permission from this Court or written agreement between Smith and B2K LLC.

8

"d. [Petitioners] Ingenuity and Robert A. Przybysz shall not enter the premises [of B2K LLC].

"i.     The [petitioners] shall not disrupt the business operations of B2K LLC or other business located [at the business address of B2K LLC].

"ii.    The [petitioners] shall not interfere with Smith or any other employee of B2K LLC from engaging in the normal operation of their business.

"e. The [petitioners] shall not access (including remote access), alter, change, run, remove, dispose of, copy, scan, amend, waste, interfere with, or otherwise control the assets, tangible or intangible, of B2K LLC without express permission of this Court or through express written agreement of the parties and signed by all parties with notary verification of the signatures. These assets shall include but are not limited to the following:

"i.     software
"ii.    source code
"iii.   hardware
"iv.    servers
"v.     drives/storage (external or internal)
"vi.    computers
"vii.   laptops
"viii.  property
"ix.    intellectual property
"x.     passwords
"xi.    tablets
"xii.   printers
"xiii.  cds
"xiv.   flash drives
"xv.    USB drives

"f. Ingenuity shall immediately determine the 'value of all of [B2K LLC's] equity on a fiscal

9

year end basis calculated as five times EBITDA and allocated on a pro rata membership basis for the fiscal year ending in 2013. This must be completed no later than thirty (30) days after the entry of this Order.

"g. The [petitioners] shall adequately provide operating expenses to B2K LLC, including payment of employee salaries/wages, business expense, rent, accounts payable, and others as necessary and due, including payment to venders."

The petitioners filed this petition for a writ of mandamus 13 days after the entry of the preliminary injunction. The petition seeks dissolution of the preliminary injunction and also challenges venue based on the forum-selection clauses.

## II. Analysis

### A. The forum-selection clauses

The threshold issue raised by the petitioners is whether this action is governed by one or more outbound forum-selection clauses purportedly requiring the parties to litigate this dispute in Michigan.[1] The petitioners argue that the trial court erred in refusing to enforce the forum-

---

[1] We recognize that the competing Michigan and Alabama injunctions raise potential comity concerns. Those concerns are neither raised nor briefed by the parties, and we decline to address them ex mero motu.

selection clauses in the various agreements at issue and, therefore, in refusing to dismiss Smith's lawsuit as being brought in an improper venue.

This Court has held that an order denying enforcement of an outbound forum-selection clause is properly reviewable by a petition for a writ of mandamus:

> "'"[A] petition for a writ of mandamus is the proper vehicle for obtaining review of an order denying enforcement of an 'outbound' forum-selection clause when it is presented in a motion to dismiss." Ex parte D.M. White Constr. Co., 806 So. 2d 370, 372 (Ala. 2001); see Ex parte CTB, Inc., 782 So. 2d 188, 190 (Ala. 2000). "[A] writ of mandamus is an extraordinary remedy, which requires the petitioner to demonstrate a clear, legal right to the relief sought, or an abuse of discretion." Ex parte Palm Harbor Homes, Inc., 798 So. 2d 656, 660 (Ala. 2001). "[T]he review of a trial court's ruling on the question of enforcing a forum-selection clause is for an abuse of discretion." Ex parte D.M. White Constr. Co., 806 So. 2d at 372.'"

Ex parte Textron, Inc., 67 So. 3d 61, 65-66 (Ala. 2011) (quoting Ex parte Leasecomm Corp., 886 So. 2d 58, 62 (Ala. 2003)).

Here we are initially presented with an issue concerning the interpretation of the four forum-selection clauses included in various related agreements. The trial court concluded, and Smith argues, that the clauses are unclear and

11

that they therefore must be construed as merely designating Michigan as a permissible forum, not the exclusive forum. The petitioners, on the other hand, contend that the forum-selection clauses establish Michigan as the mandatory and exclusive forum for resolution of this dispute. Thus, before we reach the parties' arguments concerning the enforceability of the forum-selection clauses, we must first decide whether the provisions at issue actually restrict venue to the federal and state courts in Michigan. See Ex parte CTB, Inc., 782 So. 2d 188, 191 (Ala. 2000) (finding no reason to address arguments concerning the reasonableness of enforcing a forum-selection clause when the clause could not be interpreted as requiring that the action be filed in Indiana).

Smith's complaint alleges a breach of each of the four related agreements. Each agreement contains its own forum-selection clause. The forum-selection clause in the asset-purchase agreement provides:

> "The parties (a) irrevocably submit to the jurisdiction of any Michigan or federal court sitting in Grand Rapids, Michigan, in any action arising out of this agreement, (b) agree that all claims in any action may be decided in either court, and (c) waive, to the fullest extent that they may effectively do so, the defense of an inconvenient forum."

12

1130742

(Emphasis added.) The forum-selection clause in the promissory note provides: "Any dispute shall be brought in the appropriate state or federal court in Kent County, Michigan and the parties agree that said courts have personal and subject matter jurisdiction over all disputes regarding this Note and waive any claims to the contrary." (Emphasis added.) The forum-selection clause in the employment agreement states: "This Agreement shall be enforced in the State of Michigan in either Kent County Circuit Court or the United States District Court for the Western District of Michigan and such applicable court shall be deemed to have subject matter and personal jurisdiction of the parties with respect to any dispute." (Emphasis added.) The clause in the guaranty agreement provides: "Guarantor irrevocably agrees and consents that any action against Guarantor for collection or enforcement of this guaranty may be brought in any state or federal court that is located in, or whose district includes, Kent County, Michigan, and that any such court shall have personal jurisdiction over Guarantor for purposes of that action." (Emphasis added.)

The problem before us is that, when read individually, two of the provisions appear to be "exclusive," while the

13

1130742

other two are "permissive." In construing the four forum-selection clauses, it is important to recognize the relationship between the four agreements. The asset-purchase agreement specifically references the three other "related" agreements,[2] which were apparently executed contemporaneously with the asset-purchase agreement. Indeed, execution of the

_____

[2]The asset-purchase agreement provides, in part:

"In connection with [B2K LLC's] purchase of the Purchased Assets, ... (2) [B2K LLC] and Nannette Smith and Josh Smith have agreed to enter into the Employment Agreements; and (3) the parties have agreed to take various other actions, all as described in this Agreement and in the Related Agreements."

The term "related agreements" is defined in the asset-purchase agreement as follows:

"'Related Agreements' are all written agreements, other than this Agreement, which are executed and delivered by [B2K LLC] or [B2K Inc] pursuant to this Agreement in connection with [B2K LLC's] purchase of the Purchased Assets or the other transactions contemplated by this Agreement (including the Noncompetition Agreement, the Employment Agreement, the Promissory Note, ..., Guaranty Agreement, and the other agreements contemplated thereunder), regardless of whether such other agreements are expressly referred to in this Agreement."

Other provisions of the asset-purchase agreement require the parties to execute the employment agreement, promissory note, and guaranty agreement, which were attached as exhibits to the asset-purchase agreement.

14

1130742

"related agreements" was required by the asset-purchase agreement. The well recognized principles of contract construction require that related contemporaneously executed documents should be read together. We note that the petitioners have cited no authority and make only conclusory arguments as to how the four forum-selection clauses, when read together, should be construed. The trial court, construing the four clauses together, found them to be permissive rather than mandatory. Because we are presented with no viable argument or citation of authority regarding the proper standards for interpreting or enforcing the forum-selection clauses at issue, we decline to disturb the trial court's determination that its exercise of authority in this case was not prohibited by those clauses.[3]

Based on the foregoing, we hold that the petitioners have failed to establish a clear legal right to the dismissal of

---

[3]Rule 21(a)(1)(D), Ala. R. App. P., which is similar to the analogous Rule 28(a)(10), Ala. R. App. P., governing briefs in appeals, requires a petition for an extraordinary writ filed in an appellate court to cite statutes and authorities supporting the proposition that the writ should issue. This Court stated in Ex parte Showers, 812 So. 2d 277, 281 (Ala. 2001), "[i]f anything, the extraordinary nature of a writ of mandamus makes the Rule 21 requirement of citation to authority even more compelling than the Rule 28 requirement of citation to authority in a brief on appeal."

15

1130742

Smith's action based on the forum-selection clauses. Accordingly, as to the venue issue, the petition for the writ of mandamus is due to be denied.

## B. The preliminary injunction

The petitioners next challenge the preliminary injunction entered by the trial court. Initially, we note that the proper method to challenge an injunction is by a direct appeal under Rule 4(a)(1), Ala. R. App. P. However, because the petition for a writ of mandamus was filed within the time for taking an appeal under Rule 4(a)(1) and raised an issue for which mandamus review was appropriate, we will treat the petition, insofar as it challenges the preliminary injunction, as a timely filed appeal from an order granting a preliminary injunction. See Ex parte Hollis & Wright, P.C., 987 So. 2d 530, 531 (Ala. 2007) (treating a petition for a writ of mandamus challenging an injunction as an appeal under Rule 4(a)(1)); Ex parte Health Care Mgmt. Grp. of Camden, Inc., 522 So. 2d 280, 281 (Ala. 1988) (same).

The petitioners make two general arguments in opposition to the preliminary injunction. First, they argue that Smith failed to establish the four well known requirements necessary

16

for the issuance of a preliminary injunction.  Second, they argue that, even if the elements necessary for the issuance of the injunction in a normal case were met, the injunction in this case requires the petitioners to perform certain affirmative acts.  They contend that this aspect of the injunction required a higher standard of proof, which, they say, Smith did not meet.

Alabama law controls the issuance of a preliminary injunction under Rule 65, Ala. R. Civ. P.  "The decision to grant or to deny a preliminary injunction is within the trial court's sound discretion.  In reviewing an order granting a preliminary injunction, the Court determines whether the trial court exceeded that discretion." SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So. 2d 706, 709 (Ala. 2005). Questions of law, however, are reviewed de novo.  Holiday Isle, LLC v. Adkins, 12 So. 3d 1173, 1176 (Ala. 2008).

This Court has set forth the requirements for a preliminary injunction on numerous occasions.

> "A preliminary injunction may issue only when the party seeking the injunction demonstrates
>
> > "'"(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy

17

at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction]."'

"Ormco Corp. v. Johns, 869 So. 2d 1109, 1113 (Ala. 2003) (quoting Perley v. Tapscan, Inc., 646 So. 2d 585, 587 (Ala. 1994))."

SouthTrust Bank, 931 So. 2d at 709.

The petitioners argue that Smith has failed to establish any of the above four elements. Because we conclude that Smith failed to prove she would suffer irreparable injury if the injunction were not issued, we reverse the order of the trial court granting the preliminary injunction.

Our cases hold that a preliminary injunction should be issued only when the party seeking the injunction can demonstrate that, without the injunction, he or she would suffer irreparable injury for which there is no adequate remedy at law.

"'"'Irreparable injury' is an injury that is not redressable in a court of law through an award of money damages." [Perley v. Tapscan, Inc.], 646 So. 2d [585,] 587 [(Ala. 1994)] (citing Triple J Cattle, Inc. v. Chambers, 551 So. 2d 280 (Ala. 1989)). However, "courts will not use the extraordinary power of injunctive relief merely to allay an

18

> apprehension of a possible injury; the injury must be imminent and irreparable in a court of law." Martin v. City of Linden, 667 So. 2d 732, 736 (Ala. 1995); see also Borey v. National Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 34 (2d Cir. 1991) (stating that "a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction").'"

Monte Sano Research Corp. v. Kratos Defense & Sec. Solutions, Inc., 99 So. 3d 855, 862 (Ala. 2012) (quoting Ormco Corp. v. Johns, 869 So. 2d 1109, 1113 (Ala. 2003)). "The party seeking the injunction has the burden of demonstrating that it lacks an adequate remedy." Monte Sano Research, 99 So. 3d at 862.

In the present case, Smith alleges that, because B2K LLC ceased making the monthly purchase payments required by the promissory note, it has breached the asset-purchase agreement and the promissory note. Smith also claims that because Ingenuity has failed to remedy B2K LLC's default under the note, Ingenuity has breached the guaranty agreement. Finally, she alleges that her termination as president of B2K LLC was a breach of the employment agreement. The petitioners argue that each of these alleged breaches, if proven, can be redressed through an easily quantifiable award of money damages. Further, they argue that Smith has not presented any evidence of an imminent injury to support the injunction. In

19

short, they argue, Smith has not established an imminent and irreparable injury.

Smith argues that the trial court correctly held that Smith's potential loss of control over B2K LLC's intellectual property established the irreparable-injury requirement. The trial court concluded, and the parties agree, that B2K LLC's chief asset is the source code for its software. The trial court cited the following provision of the guaranty agreement: "[B2K Inc] shall have the right to demand transfer of the pro rata amount of [Ingenuity]'s membership units in [B2K LLC] to pay the full amount of any uncured default."[4] Based on the ownership-shifting provision in the guaranty agreement, the trial court concluded that Smith would likely prevail at trial and that the assets of B2K LLC, namely the software and source code, would be shifted to her control.[5] It further concluded that the letter of termination to Smith represented Smith's

---

[4]The guaranty agreement provides a formula to be used to calculate the value of Ingenuity's equity in B2K LLC.

[5]The payee/creditor on the promissory note and the guaranty agreement is listed as B2K Inc. The material before us indicates that B2K Inc has been dissolved. For the purpose of this appeal, we assume, without deciding, that Smith is the appropriate party with capacity to enforce the various agreements.

1130742

imminent loss of control over the software and source code and that monetary damages would not suffice to compensate Smith for that loss. Specifically, the trial court concluded:

"If Smith is successful on the merits, she will be entitled, through the terms of the Guaranty [agreement], to a shift in the ownership of B2K LLC. The ownership of B2K LLC in turn owns the assets of B2K LLC which necessarily includes the software and source code to the software. The parties agree that this software and the source code are unique and that loss of rights to, and ownership interest in, this software will cause irreparable injury. Further, the harm is immediate as is clear from the evidence, including the attempted, alleged, and potential termination of Smith as president of B2K LLC.

"....

"Smith does not have an adequate remedy at law because she seeks more than monetary damages, and such monetary damages, taken alone, will be insufficient to fully compensate her. Smith has at least a twenty percent (20%) ownership interest in B2K LLC. B2K LLC owns the software and source code. The software and source code, as discussed previously, are unique and extremely difficult to value purely in monetary damages. In fact, the parties agreed that monetary damages 'would be extremely difficult, if not impossible, to estimate or determine and which may not be adequately compensated by monetary damages alone.' ... Since ownership in B2K LLC and its assets is likely to be shifted pursuant to the Guaranty [agreement], money damages alone will not be an adequate remedy at law."

21

1130742

On appeal, Smith restates the reasoning contained in the trial court's order. Smith argues, as the trial court concluded, that her imminent loss of control over B2K LLC's software and source code establishes an irreparable injury. Smith argues:

> "The purpose of the injunction is to insure against the serious injury that would occur should [Smith] lose possession of the source code and other software. Without the source code the business is not operational, and thus her continued employment is necessary to preserve the status quo until proper valuations can take place and final dispositions can be made."

Smith's brief, at 17. Other than her potential loss of control of the software and source code, she identifies no other ground of irreparable injury.

We certainly understand the importance of the software and source code to B2K LLC's business. We further understand, given Smith's partial ownership and her potentially controlling interest in B2K LLC, that the continued operation of B2K LLC is important to Smith. Thus, we do not doubt that destruction or loss of the software and source code could result in irreparable injury to B2K LLC, and, by virtue of her ownership interest in B2K LLC, to Smith. Nevertheless, we fail to understand from the evidence before us why Smith's

22

continued employment as president of B2K LLC, or her absolute control of B2K LLC, is a necessary condition to the preservation of the software and source code.

There is no evidence in the record indicating that the software and source code are in any imminent danger. The source code is owned by B2K LLC. Smith testified that the source code is stored in an electronic library located at B2K LLC's office in Birmingham. Smith testified that B2K LLC's system contains a number of redundancies designed to protect the source code. For example, the system prevents any one person from accessing or modifying all the source code at any one time. Smith also testified that the source code is backed up every night to remote servers. Although Smith testified that an unqualified operator could accidentally cause damage to the source code, there was no evidence indicating that any such damage was likely to occur if Smith is removed as president of B2K LLC. Certainly there was no evidence indicating that the petitioners intended to damage or destroy the source code. To the contrary, the trial court found that all the parties shared a common interest in the success of B2K LLC: "While the parties' relationship is currently

23

acrimonious, they also all want B2K LLC to be successful. The parties have all invested significant time and money into the business, including the development of the software and source code." Accordingly, from the record before us, we see no merit to Smith's contention that her loss of control over B2K LLC, and thus the software and source code, would cause her to suffer an "immediate and irreparable injury," necessitating the issuance of the preliminary injunction.[6]

Nor, given our conclusion above, can we say that Smith lacks an adequate legal remedy. Should she prevail on her breach-of-contract claims, monetary damages representing the debt owed under the asset-purchase agreement, the promissory note, and the guaranty agreement appear to be adequate and easily quantifiable. The same can be said for the breach of Smith's employment agreement. See Perley v. Tapscan, Inc., 646 So. 2d 585 (Ala. 1994) (affirming the trial court's refusal to enter a preliminary injunction reinstating a minority shareholder to his position as president of a company

---

[6]We do not mean to be understood as precluding the entry of an injunction should Smith present evidence of an imminent threat of compromise to the software or the source code, although we do question whether such a threatened injury would require an injunction as broad in scope as the one now at issue.

24

on the ground that money damages would provide adequate legal remedy). Moreover, our conclusion that Smith has an adequate legal remedy is reinforced by the trial court's conclusion that "[i]f Smith is successful on the merits, she will be entitled, through the terms of the Guaranty [agreement], to a shift in the ownership of B2K LLC."[7] Because Smith, if successful, will be entitled to an award of money damages and to a potential pro rata shift in ownership shares from Ingenuity, her alleged injuries are not irreparable.

Smith has failed to convince us that, without the injunction, she would suffer irreparable injury. Accordingly, she was not entitled to the preliminary injunction, and the order of the trial court issuing the injunction is due to be reversed. Because we hold that the preliminary injunction is due to be dissolved, we pretermit discussion of the petitioners' remaining arguments.

---

[7]We express no opinion at this time as to the construction or application of this particular provision because that issue is not before us. We note, however, that the petitioners have not challenged the trial court's conclusion that, if successful, Smith may be entitled to some or all of Ingenuity's ownership shares in B2K LLC.

### III. Conclusion

With regard to the trial court's denial of the petitioners' motion to dismiss based on the outbound forum-selection clauses, we deny the petition for the writ of mandamus. With regard to the petitioners' challenge of the preliminary injunction, which we treat as a timely filed direct appeal under Rule 4(a)(1)(A), Ala. R. App. P., we reverse the order of the trial court entering the preliminary injunction and remand the case to the trial court for that court to dissolve the preliminary injunction.

PETITION DENIED; REVERSED AND REMANDED WITH INSTRUCTIONS.

Stuart, Bolin, Parker, Murdock, Shaw, Wise, and Bryan, JJ., concur.

Moore, C.J., concurs in part and dissents in part.

1130742

MOORE, Chief Justice (concurring in part and dissenting in part).

I concur in the majority opinion so far as it denies the petition for a writ of mandamus on the venue issue, but I dissent from the majority opinion to the extent that it orders the dissolution of the preliminary injunction.