Rel: September 20, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

_____

### SC-2024-0128

_____

**Red Mountain Diagnostics, LLC, Donald R. Simmons, and William T. DeVos**

**v.**

**Robert A. Black, individually and on behalf of Molecular Diagnostics Laboratory, LLC**

**Appeal from Jefferson Circuit Court**
**(CV-21-902086)**

STEWART, Justice.

The proceedings underlying this appeal involve numerous parties and claims. The appellants are Donald R. Simmons, William T. DeVos,

and Red Mountain Diagnostics, LLC ("Red Mountain"), an Alabama limited-liability company of which Simmons and DeVos are the members (Red Mountain, Simmons, and DeVos are referred to collectively as "the Red Mountain parties"). The appellees are Robert A. Black and Molecular Diagnostics Laboratory, LLC ("MDL"), a foreign limited-liability company formed under the laws of Arizona of which Black and Robert Strange are the members (MDL, Black, and Strange are referred to collectively as "the MDL parties"). Black is also the sole member of Prolab Consulting, LLC ("Prolab"). Strange and Prolab are parties in the underlying proceedings but are not parties to this appeal.

In July 2019, Red Mountain and MDL entered into an agreement that provided for the division of revenues after expenses ("the joint venture") in relation to rendering medical-laboratory testing services. The joint venture ended on April 30, 2021, and, afterward, the parties accused one another of diverting revenues from the joint venture. In July 2021, Strange, individually and on behalf of MDL, sued Black and Prolab in the Jefferson Circuit Court, seeking damages, injunctive relief, and the judicial dissolution of MDL. Strange alleged that Black had diverted

2

funds from MDL and Red Mountain, and he sought a preliminary injunction enjoining Black from continuing to divert funds from MDL.

In August 2021, Black filed an answer to Strange's complaint and, individually and on behalf of MDL, asserted counterclaims against Strange and third-party claims against the Red Mountain parties. The Red Mountain parties responded and asserted counterclaims against Black and MDL and cross-claims against Prolab.

In April 2022, Black, individually and on behalf of MDL, filed a motion for a preliminary injunction requiring Strange and the Red Mountain parties to deposit with the circuit-court clerk "all funds derived from the operation" of the joint venture. Black alleged that the other parties had conspired to deprive him of funds to which he was entitled, that they had refused to disclose the amount of funds they possessed, and that he was "fearful that the funds are subject to being disposed of pending the resolution of this cause."

On July 26, 2022, based on an agreement between Strange and Black, the circuit court entered a preliminary injunction requiring Black and Strange to deposit a total of $1,026,836.64 with the circuit-court clerk; Black was ordered to deposit $925,471.26 and Strange was ordered

3

to deposit $101,365.38. Upon receipt of the funds, Strange's motion for a preliminary injunction was dismissed.

In January 2023, Black, individually and on behalf of MDL, filed, pursuant to Rule 65, Ala. R. Civ. P., an amended motion for a preliminary injunction requiring, among other things, the Red Mountain parties to deposit with the circuit-court clerk "all funds derived from the operation" of the joint venture. In the motion, Black and MDL asserted that, despite repeated requests, the Red Mountain parties had refused to disclose the amount of funds in their possession collected on behalf of the joint venture and that, as a result, "MDL is fearful that the funds are subject to being disposed of or attached by other parties or authorities pending the resolution of this cause."

In February 2024, the Red Mountain parties filed a response to the amended motion in which they asserted, among other things, that, although Black and MDL had styled the motion as having been filed pursuant to Rule 65, the motion actually sought a prejudgment seizure of property pursuant to Rule 64, Ala. R. Civ. P., and that Black and MDL had not satisfied the requirements of Rule 64. The Red Mountain parties argued that Black and MDL had not shown any possessory or ownership

interest in the funds they were seeking, which were contained in Red Mountain's operating account, and that allowing the extraordinary remedy of prejudgment seizure of Red Mountain's operating funds "could cause [Red Mountain] to cease operations, force [it] to terminate its employees, breach its contract with Brookwood Hospital, and otherwise cause damage to [Red Mountain] and its members." The Red Mountain parties further argued that, even if the motion was correctly filed under Rule 65, Black and MDL had failed to allege sufficient information to meet the required elements for injunctive relief. The Red Mountain parties asserted that, if the circuit court imposed an injunction, it should require an injunction bond of no less than $3,000,000.

On February 20, 2024, the circuit court adopted and entered Black and MDL's proposed order granting Black and MDL their requested injunctive relief and finding, in pertinent part:

"8. The Joint Venture operated very profitably and generated revenue amounting to millions of dollars.

"9. [Red Mountain Diagnostics, LLC ('RMD, LLC'),] and MDL both collected revenue related to the operation of the Joint Venture. There is a dispute among the parties as to the proper percentage of division of the profits for the 1st year of operation, but the parties concede that the split of profits after the 1st year was to be 50% to RMD, LLC and 50% to MDL for

5

the work performed until the termination of the Joint Venture on April 30, 2021.

"....

"12. RMD, LLC, Simmons, and DeVos are currently in possession of or have access to substantial funds which were generated by the Joint Venture operations. The Regions Bank business checking account statement in the name of RMD, LLC (the account in which Joint Venture revenue was deposited), for the month ending April 30, 2021, reflected an ending balance of $2,268,113.26.[1]

"13. Despite repeated requests from MDL, Strange, and Black, RMD, LLC, Simmons and DeVos have refused to disclose the present total amount of funds collected on behalf of the Joint Venture, and, further, have refused to pay said funds into Court as MDL has done.

"14. RMD, LLC is currently using the funds contained in the aforementioned Regions Bank account for current operating expenses of RMD, LLC for purposes other than the Joint Venture and is apparently co-mingling funds belonging to the Joint Venture with revenue being currently generated by RMD, LLC in connection with other endeavors.

"15. Both MDL and RMD, LLC, and their members, have included a demand for an accounting in their respective pleadings in connection with the business dealings among the parties.

"16. Based on the Agreement between RMD, LLC and MDL, at least one-half (50%) of the net profit generated by the Joint Venture and contained in the aforementioned Regions Bank Account currently already belongs to MDL.

_____

[1]Notably, the circuit court referenced an account balance from almost three years before the date the preliminary injunction was issued.

## FINDINGS BY THE COURT

"17. The Court finds that MDL has met the required elements entitling it to injunctive relief, to wit:

"(1) Without the entry of the requested injunction, MDL will suffer irreparable injury. MDL's profits contained in the RMD Regions account is being used by RMD, LLC for its current business operations unrelated to the Joint Venture. Moreover, RMD, LLC is co-mingling MDL's money with funds ostensibly being generated by RMD, LLC's current operations which are unrelated to the Joint Venture. The Court finds that money currently owned by MDL may be depleted by the time an accounting is completed. MDL should not be required to finance RMD, LLC's current operations which are unrelated to the Joint Venture.

"(2) MDL has no adequate remedy at law. All parties have demanded an accounting in this cause. The co-mingling of RMD, LLC funds and depletion of Joint Venture funds by RMD, LLC pendente lite will surely cause accounting chaos and operate to thwart MDL's right to a full and proper accounting, which may result in guesswork as to an accurate monetary judgment.

"(3) MDL has at least a reasonable chance of success on the ultimate merits in this cause. RMD, LLC is holding money which is subject to division between RMD, LLC and MDL. MDL's claim for the recovery of its share of Joint Venture profits has a likelihood of success.

"(4) That the hardship imposed on RMD, LLC by the injunction would not unreasonably

7

outweigh the benefit accruing to MDL. The granting of injunctive relief to MDL only results in the protection of its portion of Joint Venture profits which will still be subject to claims for set-off. RMD, LLC still retains in its possession funds which approximate its entitlement for profits, also subject to set off.

"18. RMD, LLC, DeVos, and Simmons had the opportunity to be heard and were provided the opportunity to file opposing affidavits objecting to MDL's sworn Petition and the granting of MDL's requested relief; they elected to do neither.

"19. That the sum of $2,268,113.26 on deposit in the checking account in the name of RMD, LLC at Regions Bank on April 30, 2021, belongs to the Joint Venture and is subject to division between RMD, LLC and MDL under the Joint Venture Agreement between the parties.

## CONCLUSION

"Based upon the foregoing, it is the opinion of the Court that the following relief is due to be granted. It is therefore ORDERED that:

"1. DeVos, Simmons, and RMD, LLC shall forthwith deposit the sum of $1,026,836.64 with the Clerk of this Court, said sum to remain on deposit with the Clerk until further orders of the Court.

"2. DeVos, Simmons, and RMD, LLC shall maintain the sum of $1,241,276.62 in the checking account in the name of RMD, LLC at Regions Bank, and shall not access or use these funds in any manner until further orders of the Court.

"3. DeVos, Simmons, and RMD, LLC are being allowed to maintain under their control more than their share of

profits from the Joint Venture contained in the Joint Venture account as of April 30, 2021, pendente lite. Additionally, the remaining portion of Joint Venture profits in the Regions account will be on deposit with the Clerk of this Court when said parties comply with this Order. Lastly, MDL has already deposited the sum of $1,026,836.64 with the Clerk of this Court in this cause. Therefore, the injunctive relief granted herein shall become effective when MDL files, as security for costs and damages, pursuant to the requirement contained within Rule 65(c), Ala. R. Civ. P., its written approval that the sum of $25,000.00 may be earmarked as such security from the money it has already deposited with the Clerk."[2]

The Red Mountain parties appealed the preliminary injunction and, shortly thereafter, filed in the circuit court a motion to stay the injunction pending the outcome of the appeal. Black and MDL filed a response in opposition to the request for a stay. On July 17, 2024, the Red Mountain parties filed a motion in this Court seeking a stay of the injunction pending the outcome of the appeal, asserting that, despite the passage of four months, the circuit court had not ruled on their motion for a stay and that Black and MDL had filed a contempt motion seeking to enforce the injunction. Black and MDL filed a response in this Court, opposing the request for a stay.

---

[2]On February 27, 2024, Black and MDL filed, in writing, their approval to earmark those funds as security for the issuance of the preliminary injunction.

9

Standard of Review

When this Court considers a trial court's entry of a preliminary injunction, we review de novo the trial court's resolution of questions of law based on undisputed facts, but we review the decision to enter the preliminary injunction under the excess-of-discretion standard. City of Helena v. Pelham Bd. of Educ., 375 So. 3d 750, 752 (Ala. 2022). As part of our review, we must consider whether the trial court's decision to issue the preliminary injunction is supported by evidence in the record. Id.

A party seeking a preliminary injunction must produce evidence sufficient to demonstrate all four of the following prerequisites:

> "(1) the party would suffer irreparable harm without the injunction, (2) the party has no adequate remedy at law, (3) the party has at least a reasonable chance of success on the ultimate merits of the case, and (4) the hardship that the injunction will impose on the opposing party will not unreasonably outweigh the benefit accruing to the party seeking the injunction."

Id. (citing Holiday Isle, LLC v. Adkins, 12 So. 3d 1173, 1176 (Ala. 2008)). "If the party seeking the injunction fails to establish each of these prerequisites, then a preliminary injunction should not be entered. If the trial court enters a preliminary injunction when these prerequisites have not been met, the trial court's order must be dissolved and the case

10

remanded." <u>Blount Recycling, LLC v. City of Cullman</u>, 884 So. 2d 850, 853 (Ala. 2003).

Discussion

The Red Mountain parties argue that Black and MDL did not present evidence satisfying any of the prerequisites for a preliminary injunction. First, they argue that Black and MDL did not establish that they would suffer immediate or irreparable harm without the issuance of a preliminary injunction and that they offered only bare speculation, unsupported by any factual allegations, that the funds in Red Mountain's operating account may be depleted without the requested injunction. The Red Mountain parties also argue that the potential alleged harm -- the depletion of funds allegedly owed to Black and MDL -- could be remedied through an award of money damages and that, as a result, injunctive relief is improper.[3]

---

[3]The Red Mountain parties also argue on appeal, as they did in the circuit court, that Black and MDL actually sought a prejudgment seizure of property, a process governed by Rule 64, Ala. R. Civ. P., and that they did not comply with the requirements of that rule. Black and MDL argue that, if this Court determines that they were required to proceed under Rule 64, the injunction should be upheld based on judicial economy because, they assert, they can prevail under Rule 64. However, because the circuit court entered the injunction order under the auspice of Rule 65, we will consider the circuit court's order under that framework.

Whether a party has demonstrated the necessity of an injunction to prevent imminent, irreparable harm and the absence of an adequate legal remedy are interrelated considerations. See Ex parte B2K Sys., LLC, 162 So. 3d 896, 904 (Ala. 2014)("Our cases hold that a preliminary injunction should be issued only when the party seeking the injunction can demonstrate that, without the injunction, he or she would suffer irreparable injury for which there is no adequate remedy at law."). "'Irreparable injury' is an injury that is not redressable in a court of law through an award of money damages." Perley v. Tapscan, Inc., 646 So. 2d 585, 587 (Ala. 1994)(citing Triple J Cattle, Inc. v. Chambers, 551 So. 2d 280 (Ala. 1989)). "[W]hen a plaintiff alleges a purely monetary loss and seeks only to recover monetary damages to redress that loss, the alleged injury is reparable." Slamen v. Slamen, 254 So. 3d 172, 177 (Ala. 2017)(plurality opinion). See also Ormco Corp. v. Johns, 869 So. 2d 1109, 1113 (Ala. 2003) (quoting Martin v. City of Linden, 667 So. 2d 732, 736 (Ala. 1995)) (explaining that injunctive relief is unavailable to prevent possible injuries; "'the injury must be imminent and irreparable in a court at law'"). "A plaintiff that can recover damages has an adequate remedy at law and is not entitled to an injunction." SouthTrust Bank of

Alabama, N.A. v. Webb-Stiles Co., 931 So. 2d 706, 709 (Ala. 2005)(citing Benetton Servs. Corp. v. Benedot, Inc., 551 So. 2d 295, 299 (Ala. 1989)).

Black and MDL acknowledge this Court's precedent establishing the necessity of imminent, irreparable harm as one factor required for injunctive relief, and they concede that injunctive relief is not available to a party seeking to recover monetary damages because that party has an adequate remedy at law. They argue, however, that injunctive relief is available to preserve and secure assets before the entry of a final judgment, and they rely on Lisenby v. Simms, 688 So. 2d 864, 868 (Ala. Civ. App. 1997), which they assert is factually congruous to this case.

Lisenby involved an action by a deceased mother's estate against one of the mother's daughters to recover money belonging to the estate. The evidence in that case established that, shortly before her mother's death, Julia Lisenby had transferred her mother's $81,000 certificate of deposit to herself pursuant to a power of attorney. The trial court determined that Lisenby's actions were not authorized by the power of attorney under which Lisenby had acted and that the funds belonged to the mother's estate. The trial court also specifically found that Lisenby had been using, and would continue using, the funds for her personal

13

living expenses; that she had no employment, income, or assets; that, without an injunction, the remaining balance of $69,107.21 would be dissipated; and that the estate would be unable to recover those funds through an action against Lisenby. Id. at 866.

Likening Lisenby to this case, Black and MDL base their claim of imminent, irreparable harm on their assertion that the Red Mountain parties have "openly" admitted to commingling and disposing of joint-venture funds to operate Red Mountain and have "brazenly" refused to stop spending the funds.[4] Black and MDL further assert that they have no adequate remedy at law because the Red Mountain parties may continue to deplete the funds in Red Mountain's operating account and, as the circuit court found, the commingling and depletion of funds "'will surely cause accounting chaos and operate to thwart [their] right to a full and proper accounting which may result in guesswork as to an accurate monetary judgment.'" Black and MDL's brief at 22 (quoting the circuit court's injunction order).

---

[4]Black and MDL do not point this Court to the portion of the record supporting their assertions that the Red Mountain parties have admitted to commingling or disposing of joint-venture funds, and, despite a thorough review of the record, we have not located such admissions.

Lisenby does not support Black and MDL's argument, and it is distinguishable from the situation in this case because the trial court in Lisenby held an ore tenus hearing and decided the merits of the pertinent issue before entering an injunction. In this case, in support of their request for injunctive relief, Black and MDL submitted a verified motion containing a general allegation that the Red Mountain parties either possessed, had taken, or had access to "substantial funds which were generated by the Joint Venture operations and other business transactions among the parties." Although Black and MDL alleged that the Red Mountain parties had refused to disclose the amount of funds in Red Mountain's operating account, Black and MDL did not submit any evidence indicating what amount of funds they claimed had been generated by the joint venture or the amount of funds to which they claimed to be entitled. Black and MDL's bare allegations in their verified motion do not establish any entitlement to the funds in Red Mountain's operating account, nor do they establish that the Red Mountain parties possessed, had disposed of, or intended to dispose of funds belonging to the joint venture or to Black and MDL. They further rely on the Red Mountain parties' contention that requiring them to deposit the funds

15

with the circuit clerk could cause the end of their business as "very strongly indicat[ing]" that the Red Mountain parties are using the joint-venture funds and do not have other funds to satisfy a judgment. As this Court has explained, a "plaintiff's mere allegation that, without the issuance of an injunction, a defendant might be unable to satisfy a potential judgment does not convert the plaintiff's reparable injury into an irreparable one that justifies injunctive relief." Slamen, 254 So. 3d at 177.

There is no evidence supporting the conclusions that Black and MDL will suffer imminent, irreparable harm without an injunction or that any harm that could occur cannot be remedied by a judgment awarding damages to Black and MDL in the event they present evidence supporting their claims.[5] Accordingly, because Black and MDL failed to establish at least two of the four prerequisites for injunctive relief, the preliminary injunction is due to be dissolved. See Blount Recycling, 884 So. 2d at 853.

_____

[5]We pretermit discussion of the two remaining elements; however, we note that, by failing to present evidence supporting the foregoing elements, Black and MDL have, likewise, failed to establish a reasonable chance of success on the merits.

16

Conclusion

Because the Red Mountain parties have demonstrated that the preliminary injunction is due to be dissolved, we reverse the circuit court's order entering the preliminary injunction, and, based on that holding, the Red Mountain parties' motion to stay the injunction and their challenge to the sufficiency of the injunction bond are moot.[6] See Ex parte Cooper, [Ms. SC-2023-0056, Aug. 25, 2023] ___ So. 3d ___, ___ (Ala. 2023)(explaining that a request to increase an inadequate preliminary injunction bond "can be entertained only while the injunction is still in place; once the injunction is determined to be unwarranted, any request to increase the bond is moot").

REVERSED AND REMANDED.

Parker, C.J., and Wise, Sellers, and Cook, JJ., concur.

---

[6]The Red Mountain parties also challenged the $25,000 injunction bond as inadequate and requested that this Court increase the bond to $3,000,000 if the injunction was not dissolved. See DeVos v. Cunningham Grp., LLC, 297 So. 3d 1176, 1186 (Ala. 2019)(holding a $25,000 injunction bond to be inadequate in light of the evidence of the potential losses caused by an injunction against DeVos and Simmons -- who are also parties to this case).